UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: _12/10/18_

MEDIA GLOW DIGITAL, LLC, et al.,      :

                    Plaintiffs,       :     16 Civ. 7907 (JFK)(HBP)

        -against-                     :     OPINION
                                            AND ORDER
PANASONIC CORPORATION OF              :
NORTH AMERICA, et al.,
                                      :
                    Defendants.
                                      :
----------------------------------X

        PITMAN, United States Magistrate Judge:

I.   Introduction

        Plaintiffs move for an Order pursuant to Rule 15 of the
Federal Rules of Civil Procedure granting leave to file a third
amended complaint (Notice of Motion, filed Aug. 1, 2018 (Docket
Item ("D.I.") 182) at 1). For the reasons set forth below, the
motion is denied.

II.  Background

    A.   Facts

        This is a breach of contract action pertaining to the
design, fabrication, and installation of a large light-emitting-

diode ("LED") sign, commissioned by plaintiffs for placement in Times Square.

In April 2010, plaintiff MGD, an Oklahoma-based limited liability company, entered a lease to build and operate a large LED sign on the façade of the Millennium Broadway hotel on West 44th Street in New York City (Proposed Third Amended Complaint, filed Aug. 1, 2018 (D.I. 183-1) ("TAC") ¶¶ 2, 13). In June 2011, MGD commissioned Lovell-Belcher to perform a survey of the Millennium Broadway's façade, including the air rights of the adjacent Bow Tie building (the "Lovell-Belcher survey") (TAC ¶¶ 15, 17). Six months later, on December 5, 2011, MGD contracted with defendant Panasonic to purchase a 7,000-square-foot LED sign to be installed on the façade of the Millennium Broadway hotel and within the available air space (the "Millennium Agreement") (TAC ¶¶ 28, 30).

The Millennium Agreement provided, in pertinent part, that:

- Panasonic was to provide a preliminary design package within 2 weeks of [a] detailed site survey being completed on site.

- Panasonic was to provide detailed drawings with revisions as required throughout the course of the project and a final document package certified by a registered P[rofessional] E[ngineer] in the state of New York.

2

- Panasonic was to follow state and local codes during [the] installation process.

(TAC ¶ 31 (brackets in original); Def.'s Mem. of Law in Supp. of Mot. for Judgment on the Pleadings, dated Nov. 30, 2017, Ex. 1 (D.I. 82-1) § 1.1). The contract also prohibited the assignment of rights or the delegation of duties without the other party's written consent (TAC ¶ 31). Finally, the contract provided that

> None of the parties, its agents, affiliates, customers, or any other persons, shall be liable to the other party for any lost profits, incidental, indirect or consequential damages, arising under this products agreement. The maximum amount of any Panasonic liability to [MGD] shall be limited to the total dollar amount of any [MGD] purchase of equipment, integrated systems, or related services that is subject of the claim of liability.

(Def.'s Mem. of Law in Supp. of Mot. for Judgment on the Pleadings, dated Nov. 30, 2017, Ex. 1 (D.I. 82-1) § 5.1). MGD agreed to a total contract price of over $4 million, with a down payment of fifty percent and the remainder due at certain project milestones (TAC ¶ 32). The parties later amended this payment schedule to an initial $100,000 payment and a subsequent $798,000 payment to cover some of Panasonic's initial costs (TAC ¶ 34).

Panasonic outsourced fabrication of the sign components to a Chinese company, SZRetop Shenzhen ("Retop"), which allegedly had a poor reputation in the relevant industry (TAC ¶ 36). Panasonic also outsourced the design, construction, and installa-

tion of the sign to defendant ICON, a North Dakota-based firm with no experience in constructing or installing large LED signs in New York City (TAC ¶¶ 37-39). MGD did not object to Panasonic's outsourcing to Retop and ICON (TAC ¶ 44).

Early in the project, MGD advised Panasonic of the limited air rights at the Millennium Broadway, and Panasonic agreed that it was necessary to measure the available air space precisely (TAC ¶¶ 48, 53-54). MGD provided documents from the Lovell-Belcher survey to Panasonic, which, in turn, provided them to ICON, while "communicat[ing] to ICON that there was some uncertainty as to what the air rights were between floors 9 and 36 of the Millennium," the proposed location of the sign (TAC ¶¶ 56, 62). Although both Panasonic and ICON doubted the accuracy of the existing survey measurements, neither took their own measurements or commissioned another survey (TAC ¶¶ 57-58, 63-64, 75). At Panasonic's direction, ICON designed the sign to be three-and-three-quarter inches deep (TAC ¶¶ 66, 73). However, the Lovell-Belcher survey showed only three-and-a-half inches of available air space at floor 27 of the Millennium Broadway (TAC ¶ 73).

The Millennium Agreement provided that installation of the sign was to begin in March 2012, but Panasonic had not even ordered all of the components from Retop by that time (TAC ¶¶ 79-

4

81).  In April 2012, MGD submitted ICON's proposed design and installation procedures for peer review by a third-party engineer, as required by the Millennium Broadway (TAC ¶ 82).  ICON was allegedly unprepared and non-responsive during the peer-review process, and the reviewing engineers found some of ICON's methods "unacceptable" (TAC ¶¶ 83-84).  On March 1, 2013, MGD instructed Panasonic to begin installing the sign upon completion of the peer review process, but ICON had still not applied for permits or hired the workforce necessary to install the sign (TAC ¶¶ 88-89).  ICON's subsequent improper filing for permits and insufficient staffing further delayed the installation of the sign (TAC ¶¶ 90-91).  When MGD demanded a revised schedule, Panasonic proposed completion of the project between June and August 2013; however, by October 2013, defendants still had not finished the work (TAC ¶¶ 95, 102).  In the meantime, the Millennium Broadway required MGD to sign a new long-term lease with a $1.6 million non-refundable pre-payment (TAC ¶¶ 100-101).

In October 2013, counsel for the Bow Tie building advised MGD that the sign, as designed, encroached on Bow Tie's air space (TAC ¶ 103).  MGD communicated this claim to Panasonic and ICON, and defendants responded that they had relied on the Lovell-Belcher survey, rather than obtaining their own survey (TAC ¶ 106).  MGD then commissioned another survey, which con-

firmed the errors in the Lovell-Belcher survey and the encroach-
ment on Bow Tie's air space (TAC ¶ 107).  Panasonic offered to
"modify the existing sign to fit within the Millennium's air
space," but no such re-design was created (TAC ¶ 109).

In early 2014, MGD abandoned the Millennium Broadway
sign project; by that time, MGD had paid more than $3 million to
Panasonic and $3 million in rent and other expenses (TAC ¶ 110).

On June 12, 2014, plaintiff TSL, an Oklahoma-based
limited liability company comprised of the principals of MGD,
contracted with Panasonic to re-purpose the existing sign for
installation on the façade of the DoubleTree Suites hotel at the
corner of West 47th Street and Broadway in New York  (TAC ¶¶ 3,
114-115).  Like the Millenium Agreement, the contract for the
DoubleTree sign limited the parties' liability as follows:

> Except with respect to the indemnification obligations
> of the parties set forth above and for any damages
> incurred by customer as a result of a default by
> Panasonic under the purchase agreement which causes a
> default under the lease or the license agreement, in no
> event shall either party be liable, to the other party,
> or any third party, for indirect, special, incidental,
> punitive, or consequential damages, loss or expenses of
> any kind (including, but not limited to, business
> interruption, lost business, lost profits, or lost
> savings), even if such party has been advised of their
> possible existence, which arise under or by reason of
> the purchase agreement.

(Def.'s Mem. of Law in Supp. of Mot. for Judgment on the Plead-
ings, dated Nov. 30, 2017, Ex. 2 (D.I. 82-2) § 7).

TSL entered a 20-year lease with the DoubleTree Suites on August 8, 2014, at a monthly rental rate of $60,000, to begin on April 1, 2015 (TAC ¶¶ 119-120). Panasonic initially promised to complete the project by June 2015, but revised that pledge to "substantial completion by August 2015" (TAC ¶¶ 121-122). Over TSL's objection, Panasonic again delegated construction and installation of the sign to ICON (TAC ¶ 123).

Once again, defendants failed to build and install the sign properly and in a timely fashion (TAC ¶¶ 124-131). ICON finally completed the installation of the sign in October 2015, but the finished sign suffered from various visual defects (TAC ¶¶ 133, 135, 137-139, 144). These defects persisted into 2018, well after the commencement of this litigation (TAC ¶¶ 147-148). Moreover, Panasonic was "responsible for acquiring UL, CE, ETL, ROSH [sic], and CCC certifications under the contracts," and although Panasonic hired Intertek to test and certify the sign, testing and certification was never completed (TAC ¶¶ 151-153).[1]

---

[1]Although plaintiffs allege gross negligence for defendants' failure "to complete the testing and certification process to obtain UL or ETL safety certifications for the installed DoubleTree Sign," (TAC ¶ 200), the only reference to the certifications listed in paragraph 152 of the TAC appears in a specifications chart in section 1.0 of the Millennium Agreement (Def.'s Mem. of Law in Supp. of Mot. for Judgment on the Pleadings, dated Nov. 30, 2017, Ex. 1 (D.I. 82-1) § 1.0). The certification requirement is not in the DoubleTree Agreement.

B.  <u>Procedural History</u>

     Plaintiffs commenced this action on October 10, 2016,
alleging breach of both the Millennium and DoubleTree contracts
(Compl., dated Oct. 10, 2016 (D.I. 1)).  On December 2, 2016,
Panasonic moved to dismiss the complaint pursuant to Rule
12(b)(6) of the Federal Rules of Civil Procedure, but plaintiffs
agreed to amend their complaint and enter mediation in an attempt
to resolve the dispute (Stipulation and Order, dated Dec. 16,
2016 (D.I. 19)).  Plaintiffs filed an amended complaint on
January 13, 2017 (Am. Compl., dated Jan. 13, 2017 (D.I. 23)).
Following an April 11, 2017 pretrial conference, the Honorable
John F. Keenan, United States District Judge, entered a schedul-
ing order that fixed the deadline for motions to amend at April
25, 2017, the close of fact discovery at September 29, 2017, and
the close of expert discovery at November 17, 2017 (Case Manage-
ment Plan and Scheduling Order, dated Apr. 11, 2017 (D.I. 30));
the Court later extended the deadline for amended pleadings to
May 8, 2017 (Order, dated Apr. 24, 2017 (D.I. 32)).  Plaintiffs
filed their second amended complaint on May 8, 2017 (Second Am.
Compl., dated May 8, 2017 (D.I. 33)).

     On September 19, 2017, the Court extended the close of
fact discovery to January 17, 2018 and the close of expert

discovery to February 22, 2018 (Am. Case Management Plan and Scheduling Order, dated Sept. 19, 2017 (D.I. 74)). After referring the matter to me for general pretrial purposes (Order of Reference, dated Jan. 23, 2018 (D.I. 91)), Judge Keenan granted plaintiffs' request to extend the deadline for fact discovery to March 1, 2018 (Order, dated Jan. 31, 2018 (D.I. 94)). Finally, due to the sudden and unexpected disability of plaintiffs' primary counsel, I extended the deadline for expert discovery to March 29, 2018 (Order, dated March 15, 2018 (D.I. 120)).

On November 30, 2017, Panasonic moved for partial judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, seeking dismissal of "all [c]ounts to the extent that they seek lost profits, incidental, indirect, consequential, special, punitive, or otherwise unrecoverable damages" (Notice of Motion for Partial Judgment on the Pleadings, dated Nov. 30, 2017 (D.I. 81) at 2). Judge Keenan granted Panasonic's motion, finding that plaintiffs had failed to sufficiently allege defendants' gross negligence, and, thus, the contractual limitations on liability were enforceable. See Media Glow Dig., LLC v. Panasonic Corp. of N. Am., 16 Civ. 7907 (JFK), 2018 WL 2175550 at *5-*8 (S.D.N.Y. May 11, 2018) (Keenan, D.J.).

On August 1, 2018, plaintiffs filed the current motion, seeking leave to file a third amended complaint (Notice of Mot., dated Aug. 1, 2018 (D.I. 182) at 1).

C.   Proposed Third
     Amended Complaint

Plaintiffs' TAC provides more detail than the second amended complaint in several relevant subject areas, including (1) defendants' alleged negligence in failing to confirm the extent of the available air space at the Millennium (TAC ¶¶ 26-27, 48-78); (2) ICON's inexperience with the specific challenges of installing such a sign in Times Square (TAC ¶¶ 39-43); (3) TSL's objection to Panasonic subcontracting to ICON for the DoubleTree sign (TAC ¶ 123); (4) the poor quality of the completed DoubleTree sign (TAC ¶¶ 141-150) and (5) defendants' failure to complete testing and certification of the DoubleTree sign (TAC ¶¶ 151-153).  The TAC also explicitly adds an allegation of gross negligence to plaintiffs' negligence and negligent misrepresentation claim (TAC ¶¶ 187-202).

III.  Analysis

A.  Applicable Legal Standards

1.  Motion to Amend

The standards applicable to a motion to amend a plead-
ing are well settled and require only brief review.  Leave to
amend a pleading should be freely granted when justice so re-
quires.  Fed.R.Civ.P. 15(a); Foman v. Davis, 371 U.S. 178, 182
(1962); Medina v. Tremor Video, Inc., 640 F. App'x 45, 47 (2d
Cir. 2016) (summary order); Loreley Fin. (Jersey) No. 3 Ltd. v.
Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015); Dluhos
v. Floating & Abandoned Vessel, Known as "New York", 162 F.3d 63,
69 (2d Cir. 1998); Gumer v. Shearson, Hammill & Co., 516 F.2d
283, 287 (2d Cir. 1974).  This "permissive standard . . . is
consistent with [the] strong preference for resolving disputes on
the merits."  Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo
Sec., LLC, supra, 797 F.3d at 190 (internal quotation marks
omitted).  "[M]otions to amend should generally be denied in
instances of futility, undue delay, bad faith or dilatory motive,
repeated failure to cure deficiencies by amendments previously
allowed, or undue prejudice to the non-moving party."  Burch v.
Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008)

(per curiam), citing Foman v. Davis, supra, 371 U.S. at 182; accord American Home Assurance Co. v. Jacky Maeder (Hong Kong) Ltd., 969 F. Supp. 184, 187-88 (S.D.N.Y. 1997) (Kaplan, D.J.); see also Lee v. Regal Cruises, Ltd., 916 F. Supp. 300, 303 (S.D.N.Y. 1996) (Kaplan, D.J.), aff'd, 116 F.3d 465 (2d Cir. 1997) (summary order), citing Foman v. Davis, supra, 371 U.S. at 182.

"'Where . . . a scheduling order governs amendments to the complaint,' and a plaintiff wishes to amend after the scheduling deadline has passed, the plaintiff must satisfy both [Federal Rules of Civil Procedure] 15 and 16 to be permitted to amend." Pasternack v. Shrader, 863 F.3d 162, 174 n. 10 (2d Cir. 2017), quoting Holmes v. Grubman, 568 F.3d 329, 334-35 (2d Cir. 2009). "As a practical matter, that means that where a schedule has limited the time to amend a complaint, the plaintiff who wants to amend must satisfy Rule 16 by showing 'good cause' to modify the scheduling order." Pasternack v. Shrader, supra, 863 F.3d at 174 n. 10. "[A] finding of 'good cause' depends on the diligence of the moving party." Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000); accord Scott v. Chipotle Mexican Grill, Inc., 300 F.R.D. 193, 197 (S.D.N.Y. 2014) (Netburn, M.J.) ("To show good cause, a movant must demonstrate diligence before filing [the] motion, such that despite the

12

movant's effort, the deadline to amend the pleadings could not have been reasonably met").  Although "the primary consideration is whether the moving party can demonstrate diligence, . . . [t]he district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors, including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants."  Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007).

Under Rule 15, a court may "deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant;" "[t]he burden is on the party who wishes to amend to provide a satisfactory explanation for the delay."  Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990); accord Cerni v. J.P. Morgan Sec. LLC, 208 F. Supp. 3d 533, 543-44 (S.D.N.Y. 2016) (Nathan, D.J.).  "'[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.'"  Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993), quoting Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 47 (2d Cir. 1983).  "'Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend.'"  Ruotolo v. City of New York, 514 F.3d

13

184, 191, (2d Cir. 2008), quoting State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981); accord Pasternack v. Shrader, supra, 863 F.3d at 174 ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith").

"Amendment may be prejudicial when, among other things, it would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'" AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 725-26 (2d Cir. 2010), quoting Block v. First Blood Assocs., supra, 988 F.2d at 350. However, "[m]ere allegations that an amendment 'will require the expenditure of additional time, effort, or money do not themselves constitute undue prejudice.'" United States ex rel. Raffington v. Bon Secours Health Sys., Inc., 285 F. Supp. 3d 759, 766, quoting Christians of Cal., Inc. v. Clive Christian N.Y., LLP, 13 Civ. 0275 (KBF)(JCF), 2014 WL 3605526 at *5 (S.D.N.Y. July 18, 2014) (Francis, M.J.).

A proposed amended complaint is futile when it fails to state a claim. AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., supra, 626 F.3d at 726; Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990); Mina Inv. Holdings Ltd. v. Lefkowitz, 184 F.R.D. 245, 257 (S.D.N.Y. 1999) (Sweet, D.J.);

14

Parker v. Sony Pictures Entm't, Inc., 19 F. Supp. 2d 141, 156 (S.D.N.Y. 1998) (Kaplan, D.J.), aff'd in pertinent part, vacated in part on other grounds sub nom., Parker v. Columbia Pictures Indus., 204 F.3d 326 (2d Cir. 2000). See generally Dluhos v. Floating & Abandoned Vessel, Known as "New York", supra, 162 F.3d at 69-70. The party opposing the amendment has the burden of demonstrating that leave to amend would be futile. Staskowski v. County of Nassau, No. 05-CV-5984 (SJF)(WDW), 2007 WL 4198341 at *4 (E.D.N.Y. Nov. 21, 2007) (adopting Report & Recommendation); Lugosch v. Congel, No. 00-CV-784, 2002 WL 1001003 at *1 (N.D.N.Y. May 14, 2002); Blaskiewicz v. County of Suffolk, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998).

An amendment to a complaint may, therefore, be denied as futile if a defendant can show that there is no "set of facts consistent with the allegations in the complaint" which would entitle the plaintiff to relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007). A proposed amended complaint is not futile when the "[f]actual allegations [are sufficient] to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, supra, 550 U.S. at 555.

> In assessing whether the proposed complaint states a claim, [courts] consider the proposed amendment[s] . . . along with the remainder of the complaint, accept as

15

true all non-conclusory factual allegations therein,
and draw all reasonable inferences in plaintiff's favor
to determine whether the allegations plausibly give
rise to an entitlement to relief.

Panther Partners Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114, 119

(2d Cir. 2012) (internal citations and quotation marks omitted);

Pyskaty v. Wide World of Cars, LLC, 856 F.3d 216, 225 (2d Cir.

2017); Francis v. City of New York, 17 Civ. 1453 (LAK)(HBP), 2018

WL 4659478 at *2 (S.D.N.Y. Aug. 21, 2018) (Pitman, M.J.);

Gayvoronskaya v. Americare, Inc., 15-CV-6641 (DLI)(SJB), 2018 WL

4378162 at *1 (E.D.N.Y. Mar. 26, 2018); United States v. New York

City Dep't of Educ., 16 Civ. 4291 (LAK)(JCF), 16 Civ. 4891

(LAK)(JCF), 2017 WL 1169653 at *2 (S.D.N.Y. Mar. 28, 2017)

(Francis, M.J.); Binder v. National Life of Vt., 02 Civ. 6411

(GEL), 2003 WL 21180417 at *2 (S.D.N.Y. May 20, 2003) (Lynch,

then D.J., now Cir. J.).

      2.  Contractual Limitations
         of Liability

"New York law generally enforces contract provisions

that absolve a party from negligence, provided, however, a party

cannot escape liability for gross negligence." Batson v. RIM San

Antonio Acquisition, LLC, 15 Civ. 7576 (ALC), 2018 WL 1581675 at

*12 (S.D.N.Y. Mar. 27, 2018) (Carter, D.J.) (internal quotation

marks omitted), citing Colnaghi, U.S.A., Ltd. v. Jewelers Prot.

Servs., Ltd., 81 N.Y.2d 821, 823, 611 N.E.2d 282, 283-84, 595 N.Y.S.2d 381, 382-83 (1993).

"Gross negligence 'is conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing.'" Am. Tel. & Tel. Co. v. City of New York, 83 F.3d 549, 556 (2d Cir. 1996), quoting Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd., supra, 81 N.Y.2d at 823-24, 611 N.E.2d at 284, 595 N.Y.S.2d 383. "Gross negligence has also been defined as 'the degree of neglect arising where there is a reckless indifference to the safety of human life or an inten- tional failure to perform a manifest duty to the public, in the performance of which the public and the party injured have interests.'" Charter Oak Fire Ins. Co. v. Trio Realty Co., 99 Civ. 10827 (LAP), 2002 WL 123506 at *4-*5 (S.D.N.Y. Jan. 31, 2002) (Preska, D.J.), quoting Int'l Mining Corp. v. Aerovias Nacionales De Colombia S.A., 57 A.D.2d 64, 67, 393 N.Y.S.2d 405, 407 (1st Dept. 1977). "Recklessness in the context of a gross negligence claim means an extreme departure from the standards of ordinary care, such that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." Bayerische Landesbank v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 61 (2d Cir. 2012) (internal quotation marks omitted).

17

> The purpose . . . of excepting claims of gross negli-
> gence from the rule permitting the release of claims
> for negligence, is to ensure that parties will have
> legal recourse for injuries from particularly malicious
> behavior.  The rule exists to protect parties in posi-
> tions of weaker bargaining power from unknowingly
> agreeing in advance to allow the other party to reck-
> lessly disregard its rights in broad and unforeseeable
> ways.  However, parties, especially those of equal
> bargaining power, should be able to rely upon the
> general New York rule that enforces contracts for the
> release of claims of liability.  If a party needs only
> to add gross negligence as a theory of liability to
> force litigation to proceed through discovery and a
> trial, contracting parties would be stripped of the
> substantial benefit of their bargain, that is, avoiding
> the expense of lengthy litigation.

Indus. Risk Insurers v. Port Auth. of N.Y. & N.J., 387 F. Supp.

2d 299, 307 (S.D.N.Y. 2005) (Hellerstein, D.J.).

In light of this exacting standard, courts in this

district have required that a defendant's conduct be particularly

egregious in order to constitute gross negligence.  See, e.g.,

Elias v. Gettry Marcus CPA, P.C., 17 Civ. 4066 (ER), 2018 WL

3117510 at *7 (S.D.N.Y. June 25, 2018) (Ramos, D.J.) (accountants

encouraged plaintiff's ex-husband to divert plaintiff's funds to

pay for accountants' services, in violation of prenuptial agree-

ment accountants helped draft); Kalinkina v. Martino Cartier

Enters., LLC, 16 Civ. 8331 (RWS), 2017 WL 2670751 at *4 (S.D.N.Y.

June 20, 2017) (Sweet, D.J.) (hair stylist cut model's neck with

scissors during demonstration, then prevented model from obtain-

ing medical treatment and tried to conceal injury); Corwin v. NYS

Bike Share, LLC, 14 Civ. 1285 (SN), 2017 WL 1318010 at *7-*8
(S.D.N.Y. Apr. 7, 2017) (Netburn, M.J.) (city bicycle-sharing
program with "over a million users" failed to inspect stations
and supervise contractors); Tekvet Techs., Co., v. Crystaltech
Web Hosting, Inc., 15 Civ. 7284 (LGS), 2016 WL 1651848 at *4-*5
(S.D.N.Y. Apr. 25, 2016) (Schofield, D.J.) (data storage company
deleted plaintiff's data and only informed plaintiff of deletion
after receiving final payment for services).

　　　　Other courts in this district, however, have declined
to find gross negligence where a defendant's conduct differed in
degree but not in kind between gross negligence and ordinary
negligence.　See, e.g., Sanchez v. Ehrlich, 16 Civ. 8677 (LAP),
2018 WL 2084147 at *1-*2, *7 (S.D.N.Y. Mar. 29, 2018) (Preska,
D.J.) (attorneys for property owner repeatedly commenced eviction
proceedings against tenant based on knowingly inaccurate arrears
calculations); Am. Auto. Ins. Co. v. Rest Assured Alarm Sys.,
Inc., 786 F. Supp. 2d 798, 801, 807-08 (S.D.N.Y. 2011) (Karas,
D.J.) (alarm company failed to "properly install, monitor, test,
and repair" alarm system, which subsequently failed to detect
fire); Indus. Risk Insurers v. Port Auth. of N.Y. & N.J., supra,
387 F. Supp. 2d 299 at 305-06 (tenant placed large flammable fuel
tanks near "critical support elements of 7WTC," contributing to
building collapse after September 11 attacks); Charter Oak Fire

Ins. Co. v. Trio Realty Co., supra, 2002 WL 123506 at *7 (land-
lord failed to inspect water heater that caused fire in commer-
cial premises between occupancy by similar tenants).

### B. Application of the
### Foregoing Principles

Because (1) plaintiffs have failed to demonstrate good
cause for their untimely motion to amend and (2) their proposed
third amended complaint is futile, plaintiffs' motion to amend is
denied.

Plaintiffs filed the current motion to amend the
complaint more than a year after the deadline for filing such
motions. Thus, under Rule 16, plaintiffs must show that they
could not reasonably have met that deadline. Plaintiffs claim,
and defendants do not dispute, that neither party had produced
any discovery before the May 8, 2017 deadline for motions to
amend and that they could not, therefore, meet the May 8, 2017
deadline. It would obviously be unreasonable to expect plain-
tiffs to amend their complaint based on factual issues raised by
discovery they had not yet received. Therefore, the issue is
whether plaintiffs failed to act diligently in pursuing discovery
concerning their claim of gross negligence and during the period

between receiving discovery from defendants and filing the present motion.

Plaintiffs claim that the need for the proposed third amended complaint did not arise until Judge Keenan granted defendants' Rule 12(c) motion on May 11, 2018. Judge Keenan's decision, however, did not newly introduce into the case the contractual limitations of liability and plaintiffs' need to prove gross negligence to overcome those limitations. To the contrary, in Panasonic's answer to plaintiffs' first amended complaint, served in February 2017, Panasonic asserted, as its Third Affirmative Defense, "Plaintiffs' claims are limited by the limitation of damages provisions included in the relevant agree-ments" (Def. Panasonic Corp.'s Answer, Affirmative Defenses, and Countercl., dated Feb. 17, 2017 (D.I. 26) at 14). Panasonic reiterated this defense in its answer to plaintiffs' second amended complaint, served in June 2017 (Def. Panasonic Corp.'s Answer, Affirmative Defenses, and Countercls., dated June 16, 2017 (D.I. 49) at 24). Thus, plaintiffs knew, or should have known, by February 2017, that they would need to establish a factual basis for a gross negligence claim to recover damages beyond the contractual limitations of liability. Plaintiffs, however, do not explain their failure to serve document requests

until November 2017 or to depose defendants' witnesses until
February 2018.

Although plaintiffs are correct that defendants have
not established significant prejudice under either the Rule 15 or
Rule 16 standards, the lack of prejudice to defendants does not
justify plaintiffs' attempt to amend the complaint at this late
stage of litigation.  Panasonic's claim of prejudice focuses
solely on the length of plaintiffs' delay, but it has failed to
set forth any additional cost, burden, or other prejudice caused
by that delay (Opp'n to Plaintiffs' Mot., dated July 25, 2018
(D.I. 185) at 13-14).  ICON, on the other hand, claims that "it
would take several months to conduct additional discovery regard-
ing Plaintiffs' new gross negligence cause of action, which . . .
will require re-evaluation of thousands of documents and more
thorough cross-examinations of previously deposed and new wit-
nesses" (ICON Defendants' Mem. of Law, dated July 25, 2018 (D.I.
186) at 17).  ICON's claims defy common sense, because a defen-
dant does not require additional discovery to understand its own
conduct, knowledge or intent.  Plaintiffs have represented,
however, that no additional discovery would be necessary and that
they will seek no additional discovery (Plaintiffs' Mem. of Law,
dated July 11, 2018 (D.I. 183) at 12).  Nevertheless, plaintiffs
seek to amend the complaint more than a year after the deadline

for motions to amend and after a months-long period of inaction in pursuing discovery. Under Rule 16, the primary consideration is the plaintiff's diligence, and plaintiffs have failed to demonstrate the requisite diligence here to justify the untimeliness of their motion to amend.

Moreover, plaintiffs' proposed third amended complaint is futile, because plaintiffs' revised claims do not raise a triable issue of fact as to defendants' gross negligence that would allow recovery that is barred by the contractual limitations on damages.

With respect to the Millennium sign, the principal difference between the second amended complaint and the proposed third amended complaint is the addition of allegations regarding defendants' mishandling of the air rights issue. Taking these allegations as true, Panasonic may well have been negligent in (1) relying on the Lovell-Belcher survey when its inaccuracies became increasingly clear, (2) failing to obtain its own air rights survey and (3) delegating design responsibilities to a subcontractor with minimal experience dealing with New York City air rights. In addition, ICON may well have been negligent in designing a sign that it knew, or should have known, would encroach upon the air rights of the adjacent building. Defendants' alleged conduct, however, even at its worst, does not rise

to the level of gross negligence required by the cases discussed
above, because defendants did not recklessly disregard the rights
of plaintiffs, nor did they place anyone in physical danger.
Therefore, plaintiffs proposed third amended complaint is futile
as it pertains to the Millennium sign to the extent it seeks to
overcome the contractual limitation on damages.

Although plaintiffs have added considerable factual
detail to the allegations pertaining to the DoubleTree sign, the
core theory of liability remains the same as it was in the second
amended complaint, namely that after delays and cost-overruns,
defendants installed a poor-quality sign on the façade of the
DoubleTree hotel.  The only new allegations with regard to the
DoubleTree sign are that defendants did not complete testing and
certification of the sign, as allegedly required in the
DoubleTree agreement.  It is unclear from the proposed third
amended complaint how, if at all, this alleged wrong has injured
plaintiffs.  Plaintiffs' damages flow from defendants' alleged
delays and delivery of an allegedly flawed product -- not the
absence of certifications.  Even assuming, arguendo, that defen-
dants had a contractual duty under the DoubleTree Agreement to
obtain these certifications for the sign, as plaintiffs allege,
defendants' failure to do so does not rise to the level of gross
negligence because no one, including plaintiffs, was injured by

defendants' alleged breach.  The only other claims of gross negligence pertaining to the DoubleTree sign are identical to claims that Judge Keenan dismissed when he granted defendants' Rule 12(c) motion, and, therefore, the proposed amended complaint is futile in this regard.

Plaintiffs rely on <u>Travelers Indem. Co. v. Losco Grp., Inc.</u>, 204 F. Supp. 2d 639, 642 (S.D.N.Y. 2002) (McMahon, D.J.), in which the plaintiff's subrogor, a school, contracted with the defendants to build a gymnasium.  The roof partially collapsed during construction, injuring two workmen.  The Honorable Colleen McMahon, United States District Judge, held that the plaintiff had offered evidence of gross negligence sufficient to overcome the defendant's motion for summary judgment that sought to enforce a contractual limitation of damages.  <u>See</u> <u>Travelers Indem. Co. v. Losco Grp., Inc.</u>, <u>supra</u>, 204 F. Supp. 2d at 645. However, that case is distinguishable from this one on several important grounds.  First, the defendants' alleged gross negligence led to precisely the type of risk to people's physical safety that animates the policy of non-enforcement of contractual limitations of liability.  <u>See</u> <u>Travelers Indem. Co. v. Losco Grp., Inc.</u>, <u>supra</u>, 204 F. Supp. 2d at 642.  In this case, plaintiffs have alleged no harm to human life or property, nor even the risk of such harm as a result of defendants' conduct.

Second, the defendant in <u>Travelers</u> allegedly violated the con-
tract by sub-contracting fabrication and installation of the roof
components to Pacific, an uncertified and inexperienced subcon-
tractor. <u>See</u> <u>Travelers Indem. Co. v. Losco Grp., Inc.</u>, <u>supra</u>,
204 F. Supp. 2d at 645. In this case, although plaintiffs
purportedly objected to the continued employment of ICON as a
subcontractor for the installation of the DoubleTree sign, they
have failed to allege any absolute contractual prohibition on the
use of subcontractors for any portion of the project. Finally,
the defendant in <u>Travelers</u> allegedly failed "to ensure the
ultrasound testing of the trusses," which ultimately failed,
causing the aforementioned injuries and property damage. <u>Travel-
ers Indem. Co. v. Losco Grp., Inc.</u>, <u>supra</u>, 204 F. Supp. 2d at
642, 645. Here, as discussed above, plaintiffs have not estab-
lished that the alleged failure by defendants to obtain third-
party certifications caused injury either to plaintiffs or anyone
else.

IV.   Conclusion

        Accordingly, for all the foregoing reasons, plaintiffs'
motion for leave to file a third amended complaint is denied.

Dated:   New York, New York
         December 10, 2018

                              SO ORDERED

                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies transmitted to:

All Counsel