USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/6/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

MEDIA GLOW DIGITAL, LLC, et al.,

                Plaintiffs,

  -against-

PANASONIC CORPORATION OF
NORTH AMERICA, et al.,

                Defendants.

------------------------------------X

16 Civ. 7907 (HBP)

OPINION
AND ORDER

        PITMAN, United States Magistrate Judge:

I. Introduction

        By notice of motion dated April 6, 2018 (Docket Item ("D.I.") 131), defendant Panasonic Corporation of North America ("Panasonic") moves to preclude plaintiffs' two rebuttal expert witnesses, Kevin Potts and Melissa Lerner. For the reasons set forth below, Panasonic's motion is granted in part and denied in part.

II. Facts

        The underlying facts and relevant procedural history are set forth in the undersigned's Report and Recommendation of even date which is being filed contemporaneously with this Opinion and Order and is incorporated by reference herein.

III. <u>Analysis</u>

   A. <u>Applicable Legal Principles</u>

In order to be admissible, expert testimony must meet both the substantive requirements and limitations of Article VII of the Federal Rules of Evidence.

Rule 702 of the Federal Rule of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The proponent of expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. <u>United States v. Williams</u>, 506 F.3d 151, 160 (2d Cir. 2007), <u>citing</u> <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579, 593 n.10 (1993). However, "the rejection of expert testimony is the exception rather than the rule." Advisory Committee Notes to the 2000 Amendments to Fed. R. Evid. 702; <u>Highland Capital Mgmt., L.P. v. Schneider</u>, 551 F. Supp. 2d 173, 185 (S.D.N.Y. 2008)

(Leisure, D.J.). "The admission of expert testimony is committed to the broad discretion of the District Court and will not be disturbed on review unless found to be 'manifestly erroneous.'" United States v. Wexler, 522 F.3d 194, 204 (2d Cir. 2008), citing United States v. Duncan, 42 F.3d 97, 102 n.3 (2d Cir. 1994).

Under Rule 702, the first issue in determining the admissibility of expert testimony is "whether the expert is qualified to testify." Arista Records LLC v. Usenet.com, Inc., 608 F. Supp. 2d 409, 422 (S.D.N.Y. 2009) (Katz, M.J.), quoting Zaremba v. General Motors Corp., 360 F.3d 355, 360 (2d Cir. 2004); see also Boykin v. Western Exp., Inc., 12 Civ. 7428 (NSR)(JCM), 2015 WL 539423 at *3 (S.D.N.Y. Feb. 6, 2015) (Román, D.J.); Baker v. Outfitters, Inc., 254 F. Supp. 2d 346, 352-53 (S.D.N.Y. 2003) (Preska, D.J.). In making this determination, the District Court must "ascertain whether the proffered expert has the educational background or training in a relevant field." Boykin v. Western Exp., Inc., supra, 2015 WL 539423 at *3, quoting Cary Oil Co. v. MG Ref. & Mktg., Inc., 99 Civ. 1725 (VM), 2003 WL 1878246 at *2 (S.D.N.Y. Apr. 11, 2003) (Marrero, D.J.). The United States Court of Appeals for the Second Circuit has interpreted the qualification requirement liberally. Mancuso v. Consolidated Edison Co., 967 F. Supp. 1437, 1442 (S.D.N.Y. 1997) (Conner, D.J.), citing McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1043 (2d Cir. 1995); see also Cedar Petrochemicals, Inc. v.

3

Dongbu Hannong Chemical Co., 769 F. Supp. 2d 269, 283 (S.D.N.Y. 2011) (Francis, M.J.) ("An expert should not be required to satisfy an overly narrow test of his own qualifications."), quoting Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp., 04 Civ. 7369, 2006 WL 2128785 at *5 (S.D.N.Y. Jul. 28, 2006) (Swain, D.J.).

Once the qualification threshold is met, the court must then look to the expert's particular opinion itself and permit the expert to testify only if the opinion is both relevant and reliable. Feinberg v. Katz, 01 Civ. 2739 (CSH), 2007 WL 4562930 at *6 (S.D.N.Y. Dec. 21, 2007) (Haight, D.J.) ("To be admissible, expert testimony must be both relevant and reliable."), citing Daubert v. Merrell Dow Pharm., Inc., supra, 509 U.S. at 589.

> As the Court explained in Daubert, the trial judge's task is to "ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." In its later opinion in Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999), the Court characterized this task as "the trial judge's general 'gatekeeping' obligation." Daubert set forth a non-exclusive checklist for trial courts to use in assessing the reliability of scientific expert testimony . . .
>
> In discharging its gatekeeping obligation, the trial judge . . . must first find that the proposed witness's "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702. If the court makes this finding, then "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion, provided (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the

4

> witness has applied the principals and methods reliably to the facts of the case." Id.

Feinberg v. Katz, supra, 2007 WL 4562930 at *6-*7; see also S.E.C. v. Badian, 822 F. Supp. 2d 352, 356-57 (S.D.N.Y. 2011) (Swain, D.J.), amended by, 06 Civ. 2621 (LTS), 2012 WL 2354458 (S.D.N.Y. June 20, 2012); CIT Grp./Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc., 815 F. Supp. 2d 673, 676-77 (S.D.N.Y. 2011) (Marrero, D.J.).

"Rule 702 is intended to ensure that the expert testimony at issue is 'helpful to the jury in comprehending and deciding issues beyond the understanding of a layperson.'" Feinberg v. Katz, supra, 2007 WL 4562930 at *7, quoting DiBella v. Hopkins, 403 F.3d 102, 121 (2d Cir. 2005). An expert witness may not, however, offer testimony that merely rehashes the testimony of percipient witnesses. United States v. Amuso, 21 F.3d 1251, 1263 (2d Cir. 1994) ("A district court may commit manifest error by admitting expert testimony where the evidence impermissibly mirrors the testimony offered by fact witnesses, or the subject matter of the expert's testimony is not beyond the ken of the average juror."); Arista Records LLC v. Usenet.com, Inc., supra, 608 F. Supp. 2d at 424-25 ("An expert who simply regurgitates what a party has told him provides no assistance to the trier of fact through the application of specialized knowledge.").

B.  Application of the
    Foregoing Legal Principles

1.  Kevin Potts

Kevin Potts has been a principal at Coherent Design in Las Vegas and Hong Kong since December 31, 2010 where he designs complex LED digital video displays and prepares the specifications and requirements for such projects (Amended Rebuttal Expert Report for Kevin Potts, dated Mar. 22, 2018, annexed as Ex. B to the Declaration of Jonathan E. Polonsky ("Polonsky Decl.") (D.I. 138-1) ("Am. Potts Rep.") at 1-2).  Prior to that, Mr. Potts was the owner of the Las Vegas office for Ford Audio Video -- a nationwide, commercial audiovisual integrator that designs, installs, rents and services professional sound, video and lighting systems (Am. Potts Rep. at 1).  In that capacity, Mr. Potts personally designed outdoor LED video displays and managed the fabrication, integration, construction and installation of LED systems for approximately 11 years (Am. Potts Rep. at 1). Mr. Potts has designed numerous LED projects in New York City, Las Vegas and Texas, and was a member of the audio design team for the LED sign outside Caesars Palace on the Las Vegas strip (Am. Potts Rep. at 2-3).  In total, Mr. Potts has over 20 years of experience in the outdoor digital signage industry (Am. Potts Rep. at 1).

In his 22-page amended rebuttal expert report, Mr.

6

Potts concluded that (1) it is the responsibility of the "solutions provider" or integrator for a large scale LED display sign to ensure that the sign can be installed in a manner consistent with applicable codes, regulations and air rights; (2) in 2011 and 2012, Panasonic's good reputation was based primarily on its use of Lighthouse LED products, not the use of Retop products; (3) in 2011 and 2012, Retop did not have a good reputation in the outdoor digital sign industry; (4) the Millennium Sign was poorly designed; (5) the DoubleTree Sign was not of good quality and would be considered unacceptable under industry standards as of March 2018; (6) the DoubleTree Sign's technical issues are unacceptable in the industry and (7) the estimated life span of a sign such as the DoubleTree Sign is at least ten years (Am. Potts Rep. at 4). In reaching these conclusions, Mr. Potts reviewed numerous reports and documents related to this litigation. In particular, Mr. Potts relied upon the report and corresponding exhibits of Panasonic's expert, Deacon Wardlow, excerpts of various depositions, Retop's website, email chains among members of the Panasonic design team, photographs of the DoubleTree Sign and his own viewing of the DoubleTree Sign on March 6, 2018 (Am. Potts Rep. at 3).

Based on his experience in the LED industry, Mr. Potts opined that it was unacceptable for a contractor or designer to accept the findings of a third-party surveyor concerning the air

7

rights for a large-scale LED sign without thoroughly checking and understanding them (Am. Potts Rep. at 5). Mr. Potts further opined that, based on his extensive contacts with manufacturers, integrators and installers in the LED industry, the favorable reputation that Panasonic enjoyed in 2011 was based on its use of Lighthouse products, that he did "not recall Retop having any reputation in the industry in the U.S. for its outdoor products [in 2011], and that it was not regarded as a good quality manufacturer" (Am. Potts Rep. at 5-6).

Mr. Potts personally observed the installed DoubleTree Sign on March 6, 2018. At that time, he noted the following defects in the sign: (1) approximately two percent of the sign was dark; (2) a portion of the sign was fluttering and blinking and (3) vertical strips in various locations on the sign were without power (Am. Potts Rep. at 6-7). Based this observation and his review of the emails and reports among the Panasonic design team regarding various defects and repairs made to the sign, Mr. Potts opined that the DoubleTree Sign was poorly designed, was not of good quality, was not manufactured within acceptable industry standards and lacked required safety certifications (Am. Potts Rep. at 6-22).

8

a. <u>Mr. Pott's Qualifications</u>

First, Panasonic contends that Mr. Potts is not qualified to testify as to whether it is the responsibility of a solutions provider or integrator to ensure that an LED sign is installed in compliance with applicable codes and regulations because he does not work for companies that are solutions providers or integrators, he has never hired anyone to conduct an air rights survey and he is not an expert in air rights (Memorandum of Law in Support of Panasonic Corporation of North America's Motion to Exclude the Testimony of Plaintiff's Designated Expert Witnesses, dated Apr. 6, 2018 (D.I. 132) ("Def. Memo.") at 11-12). Panasonic has cherry-picked portions of Mr. Potts' deposition to support this assertion (Transcript of the Deposition of Kevin Potts, dated Mar. 26, 2018, annexed as Ex. B to the Declaration of Michael L. Simes ("Simes Decl.") (D.I. 133-2) ("Potts Depo.")).

In fact, Mr. Potts worked as an integrator for several years at both Ford Audio Visual and at R2W where he personally designed LED systems and was "directly involved as an integrator in negotiations and relations with site owners and lessees" (Am. Potts Rep. at 1-2). The fact that Mr. Potts admitted that he was not an expert in air rights and has not conducted such a survey himself does not automatically disqualify him from testifying

9

about industry practice regarding the general responsibilities of an LED integrator or solutions provider given that he has over 20 years of experience in the industry. See McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1042-43 (2d Cir. 1995) (consulting engineer's expert opinion on whether plaintiff was within the zone of exposure of dangerous fumes admissible because the expert had "extensive practical experience" in the field of designing ventilation systems in the industrial workplace; he was not unqualified merely because he had no formal education related to fume dispersal patterns and no experience performing air quality studies); Marria v. Broaddus, 200 F. Supp. 2d 280, 288 (S.D.N.Y. 2002) (Buchwald, D.J.) (warden with over 20 years of experience qualified to testify to proper correctional facility management).

Panasonic next argues that Mr. Potts is unqualified to testify as to Retop's poor reputation because he admitted that he had never heard of Retop prior to this litigation (Def. Memo. at 12). However, as plaintiffs correctly point out, Mr. Potts' opinion is that Retop did not have any reputation at all within the LED sign industry in the United States and once he began to research Retop independently, he discovered negative reviews about their manufacturing quality. Given Mr. Potts' representation that he was very familiar with the reputations of several major LED manufacturing companies in 2011 based on his experience in the industry, he is qualified to testify to Retop's lack of

reputation within the United States at that time.

Finally, Panasonic maintains that Mr. Potts is not qualified to testify as to the quality of and the alleged technical issues related to the DoubleTree Sign because Mr. Potts has never been involved in the manufacture of a sign similar to the DoubleTree Sign,[1] never spoke with anyone directly involved in the manufacture of the DoubleTree Sign and only inspected the DoubleTree Sign from a distance of 500 feet (Def. Memo. at 13-14). However, these objections all go to the weight of Mr. Potts' testimony, not its admissibility. See McCullock v. H.B. Fuller Co., supra, 61 F.3d at 1043 (objections to an expert's qualifications generally go to the "credibility and weight" of the expert's testimony, not its admissibility), citing Daubert v. Merrell Dow Pharm., Inc., supra, 509 U.S. at 596; accord CSL Silicones, Inc. v. Midsun Group Inc., 14-cv-1897 (CSH), 2017 WL 6055380 at *5 (D. Conn. Dec. 7, 2017) (disputes as to an expert's qualifications "do not often warrant blanket exclusion of the testimony").

Given that the rejection of expert testimony is the exception rather than the rule, "vigorous cross-examination" and "the presentation of contrary evidence" are the appropriate remedies for plaintiff's concerns regarding Mr. Potts' creden-

---

[1] This assertion is incorrect. As noted above at page 6, Mr. Potts has extensive experience with large-scale LED video displays.

11

tials, not preclusion. United States v. Scheffer, 523 U.S. 303, 335 (1998), quoting Daubert, 509 U.S. at 596.

### b. The Reliability of Mr. Potts' Opinion

Panasonic next contends that Mr. Potts failed to utilize any reliable methodology or application in reaching his opinions because he did not conduct any independent investigation or evaluation of the record and, instead, based his opinions solely on plaintiffs' counsel's litigation theories (Def. Memo. at 16). Panasonic's argument is factually and legally incorrect.

Mr. Potts' report indicates that in addition to his own experience in the LED sign industry, he also reviewed the depositions of several fact witnesses, emails from the Panasonic design team, the expert report of Deacon Wardlow and corresponding exhibits, photographs of the DoubleTree Sign and that he personally observed the sign (Am. Potts Rep. at 3-4). In fact, a substantial portion of Mr. Potts' amended report discusses these documents and how they relate to his observation of the DoubleTree Sign in March 2018 (Am. Potts Rep. at 7-22).

The only evidence Panasonic cites to support its theory that Mr. Potts based his opinion solely on plaintiffs' litigation theories and "did not consider any facts other than those hand-selected for him by [p]laintiffs' counsel" is the fact that plaintiffs' counsel drafted Mr. Potts' initial expert report

12

(Def. Memo. at 16). Not only is this insufficient to support Panasonic's theory, but Mr. Potts explained later in his deposition that although plaintiffs' counsel physically drafted the report, counsel did so during a meeting with Mr. Potts at which Mr. Potts reviewed the report and all the changes he directed were made; Mr. Potts unequivocally confirmed that the report accurately reflected his opinions (Potts Depo. at 318-20). See Mobile Medical Intern. Corp. v. Advanced Mobile Hosp. Sys., Inc., 07-cv-231, 2015 WL 778553 at *3 (D. Vt. Feb. 24, 2015) (it is permissible for counsel to draft an expert's report where the expert "confirmed that the opinions set forth in the report [were] his own, and his testimony reveal[ed] substantial participation in the report's preparation"); Keystone Mfg. Co. v. Jaccard Corp., 394 F. Supp. 2d 543, 568 (W.D.N.Y. 2005) ("[A]ttorneys are not precluded from assisting expert witnesses in the preparation of their reports so long as the witness remains substantially involved.").

Furthermore, even if Mr. Potts' opinion lends credence to plaintiffs' theory of the case, this does not warrant preclusion of his opinion or make his opinion unreliable. Courts have long recognized that the existence of alternative factual scenarios that an expert has not considered in rendering an opinion goes only to the weight and credibility of the expert's testimony, not its admissibility. Cornell v. Adventure Racing Co.,

12-cv-1303 (FJS)(TWD), 2015 WL 4716285 at \*13-\*14 (N.D.N.Y. Aug. 7, 2015) (existence of alternative factual scenarios that an expert has not considered is not a "basis for excluding the testimony [of a proposed expert], although the trier of fact may ultimately very well reject it when weighing the credibility of the witness"); Harrison v. Ford Motor Co., 11-cv-0804 (MAD)(DEP), 2013 WL 3098695 at \*11 (N.D.N.Y. Jun. 18, 2013) (expert ignoring an equally plausible explanation goes to weight not admissibility).

Thus, Mr. Potts' opinion is grounded on sufficient facts to be admissible. To the extent Panasonic believes Mr. Potts has failed to consider alternative scenarios or additional facts, its remedy is the introduction of additional evidence, including its own expert's report, and cross-examination. See Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002) ("vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence"), quoting Daubert v. Merrell Dow Pharm., Inc., supra, 509 U.S. at 596; Cedar Petrochemicals, Inc. v. Dongbu Hannong Chemical Co., supra, 769 F. Supp. 2d at 285 ("Questions over whether there is a sufficient factual basis for an expert's

14

testimony may 'go to weight, not admissibility.'"), quoting Adesina v. Aladan Corp., 438 F. Supp. 2d 329, 343 (S.D.N.Y. 2006) (Keenan, D.J.).

        c. The Relevancy of Mr. Potts' Opinion

Panasonic also moves to preclude Mr. Potts' testimony as irrelevant to the issues in this case because he is unable to "offer any opinion that the DoubleTree Sign fails to meet the specifications requested by [p]laintiffs" and, instead, "simply seems to believe that [p]laintiffs should have bought a different sign more suitable to the DoubleTree space" (Def. Memo. at 22). Panasonic's argument is once again meritless and factually incorrect.[2]

Mr. Potts' opinions go directly to whether Panasonic provided plaintiffs with a high quality, functioning LED sign

---

[2]Panasonic also attempts to argue that Mr. Potts' opinion is an inadmissible lay opinion because "Potts concedes that he failed to use any specialized skill, knowledge, training, or expertise in reaching his opinions" (Def. Memo. at 23). Panasonic cites to absolutely no evidence to support this bold assertion, most likely because it is completely unsupported by the record. As discussed at length above, Mr. Potts has over 20 years of experience in the specialized industry of LED visual and audio outdoor signs. His testimony on the "customs and practices" of this industry will assist the jury. See Whalen v. CSX Transp., Inc., 13 Civ. 3784 (LGS)(HBP), 2016 WL 5723877 at *19 (S.D.N.Y. Sept. 29, 2016) (Pitman, M.J.) ("it is common for testimony regarding the 'customs and practices' in a particular industry to be the subject of expert testimony" (internal quotation marks and citation omitted)).

that was free from visual and electrical defects, as it contracted to do in the DoubleTree Contract. This testimony certainly has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the" testimony. Amorgianos v. Nat'l R.R. Passenger Corp., supra, 303 F.3d at 265 (internal quotation marks and citations omitted).

### d. Proper Rebuttal Opinion

Finally, Panasonic argues that Mr. Potts' opinions are not proper rebuttal opinions because his amended report contains opinions that "do not explain, rebut, or counteract evidence offered by Panasonic's experts" (Def. Memo. at 23-24). Specifically, Panasonic objects to Mr. Potts' opinions regarding tack welding, color output and required testing and certification of various components of the DoubleTree sign because those specific issues were not mentioned in Panasonic's initial expert report (Def. Memo. at 23).

While Panasonic is correct that a "rebuttal expert report is not the proper place for presenting new arguments," that is not the case here. Ironshore Ins. Ltd. v. Western Asset Mgmt. Co., 11 Civ. 5954 (LTS)(JCF), 2013 WL 2051863 at *3 (S.D.N.Y. May 15, 2013) (Francis, M.J.) (internal quotation marks and citation omitted). Panasonic's expert, Deacon Wardlow,

16

specifically opined that the Millennium Sign "was of good quality", the Millennium Sign "experienced some issues typical of a customized display [which were] more than adequately addressed by Panasonic in a timely fashion", Panasonic "met all of its warranty obligations" mandated by the DoubleTree Contract, the current quality of the DoubleTree Sign "is satisfactory" and "[t]he technical issues with [the DoubleTree Sign] were within industry standard and reasonable for the type of sign installed" (Expert Report of Deacon Wardlow, dated Jan. 31, 2018, annexed as Ex. C to Polonsky Decl. (D.I. 138-1) ("Wardlow Rep.") at 2). Mr. Potts' discussion of tack welding defects, color output issues and required testing and certification of various components of the DoubleTree sign goes to rebutting Mr. Wardlow's conclusions. Mr. Potts is not presenting new opinions or arguments; rather, he is discussing evidence and citing the specific defects that support his rebuttal opinion that the Millennium Sign was poorly designed and that the DoubleTree Sign was not of good quality and experienced technical defects that are not typical or acceptable in the outdoor digital signage industry.

Thus, I find Mr. Potts' testimony to be proper expert rebuttal opinion and admissible under Daubert.

2. <u>Melissa Lerner</u>

Melissa Lerner has been a specialist in out-of-home ("OOH") media for the past 18 years and has worked at several agencies where her main responsibilities included media planning and conducting negotiations concerning large-scale billboards and digital signs (Amended Rebuttal Expert Report for Melissa Lerner, dated Mar. 22, 2018, annexed as Ex. A to Polonsky Decl. (D.I. 138-1) ("Am. Lerner Rep.") at 1-2). In this capacity, Ms. Lerner has "evaluated and purchased Times Square signage numerous times" and claims to have extensive knowledge of the advertising rates for and revenues generated by many of the signs in Times Square (Am. Lerner Rep. at 2). Ms. Lerner has also witnessed and was directly involved in the conversion of Times Square's static signs to digital signs in recent years (Am. Lerner Rep. at 2).

In her 8-page amended rebuttal expert report, Ms. Lerner concluded that (1) the expected current average revenues of a sign in similar size and location to the DoubleTree Sign could be as much as $550,000 per month, with a more moderate estimate of approximately $528,000 per month; (2) this average revenue would have been approximately $493,038 per month in 2016 and (3) the monthly revenue of the DoubleTree Sign would have been greater if it had been installed on the facade of the Millennium Hotel -- approximately $500,000 in 2012 and approxi-

mately $614,133 in 2018 (Am. Lerner Rep. at 4).

Because Ms. Lerner's entire expert opinion is relevant only to plaintiffs' claims for lost advertising revenue, her opinion is wholly irrelevant to the remaining issues in this litigation. On May 11, 2018, the Honorable John F. Keenan, United States District Judge, dismissed all of plaintiffs' claims "to the extent that they [sought] lost profits, incidental, indirect, consequential, special, punitive, or otherwise unrecoverable damages[.]" See Media Glow Dig., LLC v. Panasonic Corp. of N. Am., 16 Civ. 7907 (JFK), 2018 WL 2175550 at *4-*8 (S.D.N.Y. May 11, 2018) (Keenan, D.J.) (internal quotation marks and citation omitted). Judge Keenan found that the contractual limitations on damages set forth in the Millennium and DoubleTree Contracts precluded plaintiffs from recovering incidental, consequential or punitive damages. Media Glow Dig., LLC v. Panasonic Corp. of N. Am., supra, 2018 WL 2175550 at *5-*8. Thus, Judge Keenan ruled that plaintiffs were "not entitled to recover damages for lost advertising revenues or payments to third parties because these kinds of damages qualif[ied] as 'consequential damages.'" Media Glow Dig., LLC v. Panasonic Corp. of N. Am., supra, 2018 WL 2175550 at *7.

Accordingly, Ms. Lerner's expert opinion will not "assist the trier of fact to . . . determine . . . [any] issue" in this case, and, thus, Panasonic's motion to preclude her

19

testimony is granted.  Daubert v. Merrell Dow Pharm., Inc., supra, 509 U.S. at 591.

IV. Conclusion

Accordingly, for all the foregoing reasons, Panasonic's motion to preclude the expert testimony of Kevin Potts is denied and Panasonic's motion to preclude the expert testimony of Melissa Lerner is granted.  The Clerk of the Court is respectfully requested to mark D.I. 131 closed.

Dated:  New York, New York
        March 6, 2019

SO ORDERED

_____
HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

All Counsel