**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 05/29/2019

------------------------------ X

MEDIA GLOW DIGITAL, LLC, and :
TIMES SQUARE LED, LLC, :
:
            Plaintiffs, :
:
   -against- :
:
PANASONIC CORPORATION OF NORTH :
AMERICA, ICON ARCHITECTURAL :
GROUP, LLC, ICON ARCHITECTURAL :
GROUP, PLLC, ICON HD, LLC, and :
EARL B. LOVELL – S.P. BELCHER, :
INC., :
            Defendants. :
:
------------------------------ X

No. 16 Civ. 7907 (JFK)(HBP)

**ORDER & OPINION**

**JOHN F. KEENAN, United States District Judge:**

On April 3, 2019 and April 12, 2019, respectively, this Court received Defendant Panasonic Corporation of North America's ("Panasonic") and Plaintiffs Media Glow Digital, LLC ("MGD") and Time Square LED, LLC ("TSL"; collectively with MGD, the "Plaintiffs") motions for reconsideration of this Court's March 29, 2019 Opinion and Order. The March 29 Order partially adopted Magistrate Judge Henry Pitman's Report and Recommendation. For the reasons below, the Court grants Panasonic's motion for reconsideration and partially grants Plaintiffs' motion for reconsideration.

## I. Background

### A. Factual Background

1

The Court assumes familiarity with the facts of this case
as stated in a past order and Magistrate Judge Pitman's Report
and Recommendation (the "Report"). See Report & Recommendation
at 1-10, ECF No. 195 (filed Mar. 6, 2019) [hereinafter
"Report"]; Media Glow Digital, LLC v. Panasonic Corp. of N. Am.,
16 Civ. 7907 (JFK), 2018 WL 2175550, at *1-3 (S.D.N.Y. May 11,
2018).

## B. Procedural History

On March 6, 2019, Magistrate Judge Henry Pitman issued the
Report addressing the motions for summary judgment filed by
Panasonic and Defendants ICON Architectural Group, LLC, ICON
Architectural Group, PLLC, and ICON HD, LLC (collectively
"ICON"). On March 20, 2019, the Court received objections to
the Report from Panasonic, Plaintiffs, and ICON. See ECF No.
197, 198 & 199.

On March 29, 2019, the Court issued an order partially
adopting the Report's recommendations (the "March 29 Order").
See Media Glow Digital, LLC v. Panasonic Corp. of N. Am., 16
Civ. 7907 (JFK), 2019 WL 1434311 (S.D.N.Y. Mar. 29, 2019). As
to ICON's motion for summary judgment, this Court (1) granted
summary judgment on Plaintiffs' breach of contract and negligent
misrepresentation claims, but (2) denied summary judgment on
Plaintiffs' negligence and professional malpractice claims. As
to Panasonic's motion for summary judgment, the Court (1)

granted summary judgment on Plaintiffs' negligence, negligent misrepresentation, and fraud claims, but (2) denied summary judgment as to Plaintiffs' breach of warranty and fraudulent inducement claims. The Court also denied summary judgment on Panasonic's breach of contract counterclaim against TSL.

On April 3, 2019, Panasonic filed a motion for reconsideration, pursuant to Local Civil Rule 6.3, arguing that the Court should reconsider its decision to deny Panasonic's motion for summary judgment as to Plaintiffs' fraudulent inducement claim. On April 12, 2019, Plaintiffs filed a motion for reconsideration, pursuant to Local Civil Rule 6.3, arguing that the Court should reconsider its decisions to (1) grant ICON's summary judgment motion as to Plaintiffs' negligence and professional malpractice claims and (2) grant Panasonic's summary judgment motion as to Plaintiffs' negligence claims.

## II.  Legal Standards

The Second Circuit has made clear that motions for reconsideration are to be denied except where "the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the Court." Stagg P.C. v. U.S. Dep't of State, No. 15 Civ. 8468 (KPF), 2019 WL 1863418, at *1 (S.D.N.Y. Apr. 25, 2019) (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)). Compelling

reasons to grant a motion for reconsideration are limited to "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992). Indeed, a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking 'a second bite at the apple[.]'" Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (quoting Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998)); see also Stone v. Theatrical Inv. Corp., 80 F. Supp. 3d 505, 506 (S.D.N.Y. 2015) (observing that a motion for reconsideration "is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced.").

### III. Discussion

### A. Panasonic's Motion for Reconsideration

In the March 29 Order, the Court found that "the parties did not address fraudulent inducement in any of their submissions" and, thus, that Panasonic had failed to demonstrate that no genuine issue of material fact existed as to that claim. Media Glow Digital, 2019 WL 1434311 at *3. Accordingly, the Court denied Panasonic's summary judgment motion as to

4

Plaintiffs' fraudulent inducement claim. Id. (citing Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d Cir. 2017)).

Panasonic argues that the Court should reconsider this holding as it did, in fact, address fraudulent inducement in its submissions. (Pan. Mem. at 2-3 (citing ECF No. 139 at 2, ECF No. 140 at i, 15-16; ECF No. 158 at 8).) After a thorough review, the Court is persuaded that the text of Panasonic's arguments, when read together with the relevant subheadings, indicates that Panasonic did address fraudulent inducement. Accordingly, Panasonic's motion for reconsideration is granted. Virgin Atl., 956 F.2d at 1255. As this holding was made in the context of considering Plaintiffs' objections to the Report and those objections made new arguments, the Court will review Panasonic's motion for summary judgment on Plaintiffs' fraudulent inducement claim de novo. Idlisan v. Mount Sinai Med. Ctr., No. 12-cv-8935 (PAC)(RLE), 2015 WL 136012, at *2 (S.D.N.Y. Jan. 9, 2015).

To demonstrate a claim for fraudulent inducement under New York law, a plaintiff must show that a defendant (1) made a material misrepresentation of a presently existing or past fact, (2) with intent to deceive, (3) that plaintiffs reasonably relied on this misrepresentation, and (4) damages resulted. Johnson v. Nextel Comnc'ns, Inc., 660 F.3d 131, 143 (2d Cir. 2011) (citing Ross v. Louise Wise Servs., Inc., 8 N.Y.3d 478,

5

488 (N.Y. 2007)).  Here, Panasonic and Plaintiffs agree that the alleged misrepresentations on which Plaintiffs' fraud and fraudulent inducement claims are based are the same misrepresentations that underpin Plaintiffs' negligent misrepresentation claim. ECF No. 140 at 15 (Panasonic); ECF No. 147 at 23 (Plaintiffs).  Specifically, Plaintiffs contend Panasonic misrepresented that (1) it would use its own designers and engineers to complete the Millennium sign, (2) that the sign would be completed on time, (3) the sign would be completed on budget, (4) the sign was completed and would be shipped after installment payments, (5) the sign would be installed by a certain date, and (6) the sign—now the DoubleTree sign—would be of a certain quality. ECF No. 147 at 21-22; Am. Compl. ¶¶ 36, 41, 53.  These representations all address how the sign would be created, when it would be completed, how much it would cost to complete it, and its quality on completion.  Since all of these issues are addressed in the contracts that Panasonic and Plaintiffs executed (Hansen Decl. Ex. 1-3, 5, ECF No. 171), even if the alleged misrepresentations took place, they constitute little more than intentionally false statements by which Panasonic indicated its intent to perform under the contract. Such statements are, in general, insufficient to support a claim of fraud under New York law. Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 19-20 (2d Cir. 1996)

(citing <u>McKernin v. Fanny Farmer Candy Shops, Inc.</u>, 176 A.D.2d 233, 234 (2d Dep't 1991) (where a fraud claim "is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in fraud does not lie"); <u>Metropolitan Transp. Auth. v. Triumph Adver. Prods.</u>, 116 A.D.2d 526, 527 (1st Dep't 1986) (dismissing a fraud claim where the claim "allege[d] only a breach of the representations of performance implicit in making the bid and a subsequent assurance of performance" by the defendant)); <u>see also</u> <u>Wall v. CSX Transp., Inc.</u>, 471 F.3d 410, 416 (2d Cir. 2006) (holding that, as a general matter, a fraud claim may not be used as a means of restating what is, in substance, a breach of contract claim (citing <u>New York Univ. v. Cont'l Ins. Co.</u>, 87 N.Y.2d 308, 318 (N.Y. 1995))).  Indeed, where, as here, "a fraud claim is premised on defendants' alleged breach of contractual duties, a plaintiff may maintain the fraud claim in one of three ways:  (1) 'demonstrating a legal duty separate from the duty to perform under the contract'; (2) 'demonstrat[ing] a fraudulent misrepresentation collateral or extraneous to the contract'; or (3) 'seek[ing] special damages that are caused by the misrepresentation and unrecoverable as contract damages.'" <u>Wiener v. Fireman's Fund Ins. Co.</u>, 14-CV-3699, 2015 WL 13742025, at *4 (E.D.N.Y. June 15,

7

2015) (quoting <u>Bridgestone/Firestone</u>, 98 F.3d at 20); <u>see also</u>

<u>GoSmile, Inc. v. Levine</u>, 81 A.D.3d 77, 81 (1st Dep't 2010).

In the Report's recommendations addressing fraud and

fraudulent inducement—to which Plaintiffs made no objections as

to fraud and which the Court, finding no facial error, adopted

(<u>Media Glow</u>, 2019 WL 1434311 at *3)—Magistrate Judge Pitman

concluded that none of these so-called <u>Bridgestone</u> exceptions

applied in this case. <u>Id.</u> at 35-37. The Court agrees.

On the issue of separate legal duty, the Report concluded

that no separate legal duty existed as to Plaintiffs' negligent

misrepresentation claim and applied that conclusion to its fraud

and fraudulent inducement claims. Report at 26-32, 35-37.

Plaintiffs made no objections to these conclusions on negligent

misrepresentation or fraud and this Court adopted them. <u>Media</u>

<u>Glow</u>, 2019 WL 1434311 at *3. These holdings are equally

applicable to Plaintiffs' fraudulent inducement claim and, thus,

they are adopted here. Accordingly, for the same reasons stated

in the Report, there is no legal duty separate from the

contracts that would support a fraudulent inducement claim.

Even if the Court were not inclined to apply its already adopted

holding, Plaintiffs' argument that Panasonic had a separate,

non-delegable duty fails as that duty—by Plaintiff's own

admission—arises out of the provisions of the contract. ECF No.

198 at 10-11; <u>see Bridgestone/Firestone</u>, 98 F.3d at 20 (holding

that the legal duty must be "separate from the duty to perform under the contract"); BNP Paribas Mortg. Corp. v. Bank of Am., N.A., 949 F. Supp. 2d 505 (S.D.N.Y. 2013) ("New York law makes clear that the allegedly tortious conduct must be such that there would be liability even if no contract existed.").

Plaintiffs argue that the misrepresentations in their fraudulent inducement claim were collateral to the contracts. ECF No. 198 at 12-16. As the Court held at page 8, all of the alleged misrepresentations are related to performance under the contracts and are, thus, not collateral or extraneous to the contracts. Bridgestone, 98 F.3d at 19-20; Patell Indus. Mach. Co., Inc. v. Toyoda Mach. USA, Inc., 93 Civ. 1572 (FJS), 1997 WL 10972, at *3 (N.D.N.Y. Jan. 9, 1997) ("Under New York law, a plaintiff cannot maintain a claim for both fraud and breach of contract where the alleged fraudulent misrepresentations are to the underlying terms of the contract."); Krantz v. Chateau Stores of Can. Ltd., 256 A.D.2d 186, 187 (1s Dep't 1998) ("A cause of action for fraud does not arise when the only fraud charges relates to breach of contract.").

Finally, the Court finds that no special damages are recoverable in this case. No special damages are alleged where the damages sought for the purported fraud overlaps with consequential damages sought under the breach of contract claim. Kriegel v. Donelli, No. 11-cv-9160 (ER), 2014 WL 2936000, at *14

(S.D.N.Y. June 30, 2014); see also Manas v. VMA Assocs., LLC, 863 N.Y.S.2d 4, 7-8 (1st Dep't 2008). The Court, in deciding Panasonic's Rule 12(c) motion, has already held that no special damages extraneous to the contracts are available. Media Glow, 2018 WL 2175550, at *6 (limiting Plaintiffs to those economic damages set forth in the contracts).

Accordingly, Plaintiffs cannot maintain a claim for fraudulent inducement and the Court adopts the Report's recommendation that summary judgment be granted on this claim.

### B. Plaintiffs' Motion for Reconsideration

As previously mentioned, Plaintiffs argue that the Court should reconsider its decisions to (1) grant ICON's summary judgment motion as to Plaintiffs' negligence and professional malpractice claims and (2) grant Panasonic's summary judgment motion as to Plaintiffs' negligence claims.

### 1. Plaintiffs' Negligence & Professional Malpractice Claims Against ICON

ICON filed its objections to the Report on March 20, 2019 and the Court issued its order partially adopting the Report on March 29, 2019. Plaintiffs correctly point out that, in so doing, the Court overlooked that Federal Rule of Civil Procedure 72(b)(2) gives them fourteen days to respond to ICON's objections. The Court, thus, decided the March 29 Order without the benefit of Plaintiffs' opposition. Accordingly, the motion

10

for reconsideration on Plaintiffs' negligence and professional malpractice claim is granted and the Court will now consider this part of the Report de novo. One Beacon Ins. Co. v. Old Williamsburg Candle Corp., No. 03 Civ. 6901 (LAK), 2006 WL 2773019, at *1 (S.D.N.Y. Sept. 27, 2006).

### a. Economic Loss Doctrine

In its motion for summary judgment, ICON argued that because Plaintiffs and ICON are not in contractual privity and Plaintiffs are seeking recovery purely for economic losses, New York's economic loss doctrine bars their claims for negligence and professional malpractice as a matter of law. ECF No. 168 at 12-13. The Report disagreed with ICON, holding that Plaintiffs' claims for negligence and professional malpractice are not barred by the economic loss doctrine where (1) the functional equivalent of privity exists between Plaintiffs and ICON or (2) the case involves liability for the violation of a professional duty. Report at 57-60 (collecting cases). Citing Plaintiffs' evidence that the functional equivalent of privity existed between Plaintiffs and ICON, the Report held that Plaintiffs had "established a genuine issue of material fact that ICON owed them a cognizable duty of care" precluding the economic loss doctrine from blocking their claims. Id. at 57-58. The Report also held that ICON, as a professional, licensed architect, may owe an independent legal duty to Plaintiffs which could also

11

spare these claims from being barred by the economic loss doctrine. Id. at 59-61.

ICON objected, arguing that the Report's conclusion that the functional equivalent of privity exception to the economic loss doctrine applies to negligence and professional malpractice claims is incorrect under New York law. ECF No. 199 at 6-17. In their response to ICON's objections, filed as part of their motion for reconsideration, Plaintiffs dispute ICON's legal interpretation. ECF No. 209 at 9-13.

New York law limits professional negligence claims to situations where the relationship between plaintiffs and defendant is either (1) privity of contract or (2) a bond between them so close as to be the functional equivalent of privity. Stapleton v. Barrett Crane Design & Engineering, 725 F. App'x 28, 31 (2d Cir. 2018) (summary order) (citing Perfetto v. CEA Eng'rs, P.C., 980 N.Y.S.2d 788, 789 (2d Dep't 2014)).

Some courts have suggested—in opinions on which ICON heavily relies—that this exception is restricted to claims for negligent misrepresentation. See Stapleton v. Pavilion Bldg. Installation Sys., Inc., 09-cv-934S, 2017 WL 431801, at *5 n.6 (W.D.N.Y. Feb. 1, 2017) (applying the functional equivalent of privity test to a professional negligence claim only after converting it to a claim for negligent misrepresentation); Travelers, 734 F. Supp. 2d at 380 ("Insofar as [plaintiff]

12

alleges in the Complaint that 'the functional equivalent of privity exist[ed] between [defendant and third-party defendant], [plaintiff] has indicated that its 'negligence and/or professional negligence' claim is one for negligent misrepresentation"); Sutton Animal Hosp. PLLC v. D&D Dev., Inc., 2018 N.Y. Misc. LEXIS 4269, at 3-5 (N.Y. Sup. Ct. Sept. 24, 2018) (finding no cognizable claim for professional malpractice despite finding that the plaintiff had a relationship that was the functional equivalent of privity). This is, no doubt, because in Ossining Union Free School Dist. v. Anderson LaRocca Anderson, the seminal decision on this exception, the New York Court of Appeals considered a negligent misrepresentation claim and stated that the "long-standing rule is that recovery may be had for pecuniary loss arising from negligent representations where there is actual privity of contract between the parties or a relationship so close as to approach that of privity." 73 N.Y.2d 417, 424 (N.Y. 1989) (emphasis added). The Court finds, however, that the weight of cases—including Second Circuit cases—have applied the functional equivalent of privity exception to claims for negligence and professional malpractice.[1] See, e.g., Stapleton, 725 F. App'x at 31; Fin. Guar. Ins. Co. v. Putnam Advisory Co., 783 F.3d 395, 405 (2d Cir. 2015) (applying

---

[1] Under New York law, "professional malpractice" is a species of negligence. Hydro Investors Inc. v. Trafalgar Power Inc., 227 F.3d 8, 18 (2d Cir. 2000).

the functional equivalent of privity test to claims for negligence and negligent misrepresentation); Bayerische Landesbank v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 45, 59-60 (2d Cir. 2012) (finding that "a plaintiff that can satisfy the [functional equivalent of privity test's] requirements will, we think, also be within the limits established under New York law for tort claims sounding in negligence that are brought by non-privy third parties."); Wax NJ-2, LLC v. JFB Constr. & Dev., 111 F. Supp. 3d 434, 446 (S.D.N.Y. 2015) ("Though Ossining itself involved the tort of negligent misrepresentation, its reasoning extends naturally to other sorts of professional negligence, and the Appellate Division has so extended it on at least one occasion. See Melnick v. Parlato, 296 A.D.2d 443, 443 (N.Y. App. Div. 2002)."); Perfetto, 980 N.Y.S.2d at 789 ("Like a cause of action alleging negligent misrepresentation, a viable cause of action alleging professional negligence or malpractice requires that the underlying relationship between the parties be one of privity of contract, or that the bond between them be so close as to be the functional equivalent of privity."); Bullmore v. Ernst & Young Cayman Is., 45 A.D.3d 461, 464 (1st Dep't Nov. 27, 2007) ("[A] viable cause of action for professional malpractice or negligence 'requires that the underlying relationship between the parties be one of contract or the bond between them so close as to be the functional equivalent of privity.'" (quoting

Ossining, 73 N.Y.3d at 419)). Thus, if a genuine issue of material fact about the functional equivalent of privity in this case exists, Plaintiffs negligence and professional malpractice claims are not barred by the economic loss doctrine.

Under New York law, the functional equivalent of privity exists where a plaintiff can establish that "(1) the defendant had an awareness that its work was to be used for a particular purpose; (2) there was reliance by a third party known to the defendant in furtherance of that purpose; and (3) there existed some conduct by the defendant linking it to that known third party evincing the defendant's understanding of the third party's reliance." Fin. Guar., 783 F.3d at 405-06 (citing Bayerische, 692 F.3d at 59). Here, as the Report rightly points out, Plaintiffs have presented evidence establishing that (1) ICON was fully aware the LED sign was being manufactured for Plaintiffs' benefit, (2) Plaintiffs relied on the services being provided by ICON, and (3) ICON apprised Plaintiffs of the status of the project and sent them updated schedules for the completion of the signs. Report at 57 (citing ECF No. 171-2 Ex. 1 at 254-55). Viewing the evidence in a light most favorable to the Plaintiffs, the Court finds that Plaintiffs have established a genuine issue of material fact as to the functional equivalent of privity between them and ICON. Aktas v. JMC Dev. Co Inc., 877 F. Supp. 2d 1, 27 (N.D.N.Y. 2012). Accordingly, the Court

denies ICON's motion for summary judgment on Plaintiffs'
negligence and professional malpractice claims under the
economic loss doctrine bar. Id.

### b. Expert Testimony

ICON further argued at summary judgment that, even if its
economic loss doctrine argument failed, Plaintiffs' professional
malpractice claim must still be dismissed because Plaintiffs
have failed to offer expert testimony demonstrating how ICON
violated a professional standard of care. ECF No. 168 at 20-22.
Magistrate Judge Pitman held that Plaintiffs had raised "issues
of fact as to whether expert testimony is required to prove that
ICON deviated from the required standard." Report at 62-63.
ICON—in its objections—argued that the alleged acts of
malpractice the Report identified as potentially appropriate for
a lay jury were, as a matter of New York law, issues that
required expert testimony which Plaintiffs had failed to
provide. ECF No. 199 at 17-20.

A claim for professional malpractice requires a plaintiff
to prove that the defendant departed from the "accepted
standards of practice." Bruno v. Trus Joist a Weyerhaeuser Bus.,
87 A.D.3d 670, 672 (2d Dep't 2011) (citing Kung v. Zheng, 73
A.D.3d 862, 863 (2d Dep't 2010)). "Unless the facts and
circumstances of the case would permit a lay person to evaluate
whether an architect's performance lived up to the accepted

standards of practice in a given case, the plaintiff bears the burden to present expert evidence setting forth the appropriate standard of care." Wax NJ-2, 111 F. Supp. 3d at 446 (citing 530 E. 89 Corp. v. Unger, 43 N.Y.2d 776, 777 (N.Y. 1977)).

Here, as the Magistrate Judge observed, ICON is correct that Plaintiffs' expert's report is limited to the mistakes and shortcomings of Panasonic and does not directly address ICON's conduct. Plaintiffs argue, however, that their malpractice claim is not barred for three reasons.

First, Plaintiffs point out that Panasonic itself complained of and documented ICON's many delays and project failures which, since Panasonic sub-contracted ICON "is sufficient for the jury." ECF No. 173 at 21. Plaintiffs have, however, cited no authority that even suggests a primary contractor's mere documentation of and complaints about a sub-contractor's delays and project failures so simplifies the question of whether that sub-contractor violated the accepted standards of practice of its industry as to allow a lay juror to answer it. Indeed, Plaintiffs' interpretation of the law would allow virtually any contractor to forego expert testimony when bringing a professional malpractice suit against a sub-contractor, so long as the contractor documented its own belief that there were delays and failures in the subcontractor's work. Such a holding is clearly at odds with the expert testimony

17

requirements in New York law. Wax NJ-2, 111 F. Supp. 3d at 446 (citing 530 E. 89 Corp., 43 N.Y.2d at 777). Panasonic's documentation, thus, does not allow Plaintiffs to elude the requirement for expert testimony.

Second, Plaintiffs argue that ICON's own testimony is sufficient to establish a claim for malpractice. ECF No. 173 at 21-22. They argue that ICON admitted that it received Millennium air rights data that it knew required correction. Id. Although Michael Kuntz ("Kuntz")—Vice President of ICON Architectural Group—testified that an architect "would want to know who created the incomplete air rights summary, where the information came from, when the measurements were taken, and who took the measurements," ICON never insisted on this information and proceeded without requiring any resolution of the above-documented issues. Id. at 22. Finally, when Kuntz was asked whether it would be "reasonable for Panasonic or anyone else on this project to rely on those [air rights] numbers after you pointed out the error," he answered "No." Id. The Court is not persuaded that this testimony constitutes ICON's admission that it fell below professional standards of care or that a lay person could make that assessment. Though the testimony Plaintiffs quoted could be read as Kuntz's confession that ICON acted unreasonably, just a few questions previous to that one, Kuntz testified that ICON itself had not relied on the allegedly

incorrect air rights figures. ECF No. 171-2 at 123, 262. Thus,
read in the appropriate context, this statement says nothing
about the reasonableness of ICON's conduct. Further, the Court
is doubtful that a party merely stating it acted "unreasonably"
constitutes an admission that it departed from its industry's
acceptable standards of practice. Plaintiffs only remaining
arguments are that ICON's representative's testimony that it (1)
did not insist on background information, in contradiction of
its own stated belief of what an architect would want to know,
and (2) proceeded based on inaccurate information is sufficient
to establish a claim for professional malpractice. The Court is
unconvinced. That ICON allegedly acted in contradiction of what
it believes an architect would want to know does not necessarily
constitute an admission that it departed from the acceptable
standards of practice in its industry. While proceeding without
a clarifying survey of the air rights in a situation where that
survey is not clearly your responsibility may be a departure
from the acceptable standards of practice, that is not self-
evident. Indeed, this is the type of complex question that is
"not within the competence of untutored laypersons to evaluate,
as 'common experience and observations offer little guidance.'"
Michael v. He Gin Lee Architect Planner, PLLC, 153 A.D.3d 704,
705 (2d Dep't 2017) (quoting 530 E. 89 Corp., 43 N.Y.2d at 777).
As such, ICON's testimony is insufficient to establish a claim

of professional malpractice and the issues raised were not those that a lay juror could have resolved. Accordingly, expert testimony was required and, because Plaintiffs did not provide it, their claim for professional malpractice cannot stand on this point.

Finally, Plaintiffs argue that some parts of their expert testimony about Panasonic applies equally to ICON. ECF No. 173 at 22-23. Plaintiffs argue that their expert testified that it is the responsibility of a "solutions provider" or integrator for an outdoor large-scale LED video sign to ensure the sign can be installed in a manner consistent with the applicable codes and regulations and the rights of adjacent landowners. Id. This means conducting their own air rights survey if they are not certain of another survey's meaning or assumptions. Id. Plaintiffs argue that because ICON, through Kuntz, "testified that it considers itself an integrator for sign projects," its expert testimony applies to ICON. Id. Although Plaintiffs have provided testimony indicating ICON believes itself to be an integrator of sign projects, it has cited no evidence that ICON considered itself an integrator or solutions provider for this particular project. Plaintiffs have also failed to cite expert testimony for a definition of what is considered a "solutions provider" or "integrator" on the relevant projects such that a finder of fact could apply that definition to ICON. Given these

shortcomings, the expert testimony Plaintiffs have cited does not apply to ICON for the purposes of showing that ICON violated industry standards when it failed to perform or commission an air rights survey. Further, even if ICON considered itself a solutions provider or integrator on this case, it is clear that Panasonic—who sub-contracted ICON—also acted as a solutions provider, integrator, or both. Plaintiffs' expert's testimony does not address which party has the responsibility to conduct the air rights survey in such a case. Indeed, as the Court has already mentioned, it was—at best—unclear on this project whether ICON or Panasonic bore that responsibility. Thus, Plaintiffs have provided no relevant expert testimony and, as the Court has already held, this is not a question a lay juror can resolve. Michael, 153 A.D.3d at 705. Accordingly, this issue does not escape the expert testimony requirement.

Plaintiffs have, thus, failed to meet their burden of providing expert testimony on the appropriate standards of care applicable to their professional malpractice claim against ICON. Wax NJ-2, 111 F. Supp. 3d at 446. Accordingly, the Court departs from the Report's recommendations and grants ICON's motion for summary judgment on this claim.

## 2. Plaintiffs' Negligence Claims Against Panasonic

In the March 29 Order, following Plaintiffs' objection, the Court reviewed the Report's recommendation to dismiss

Plaintiffs' negligence claims against Panasonic for clear error, not de novo, since Plaintiffs' objection "merely reiterated their original arguments." Media Glow Digital, 2019 WL 1434311 at *3. In their motion for reconsideration, Plaintiffs argue that the Court should have reviewed the Report's recommendation on these claims de novo, citing four supporting cases. ECF No. 209 at 14-15 (citing Moss v. Colvin, 845 F.3d 516, 519 n.2 (2d Cir. 2017) ("[W]e are skeptical that clear error review would be appropriate in this instance, where arguably 'the only way for [plaintiff] to raise . . . arguments [on that point] [was] to reiterate them."); Watson v. Geithner, No. 11 Civ. 9527 (AJN), 2013 WL 5441748, at *2 (S.D.N.Y. 2014) (while "courts in this district often state that clear error review is . . . appropriate if a party's objection 'simply reiterates [the party's] original arguments' . . . support for that doctrine is arguably lacking in the language of both 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2)."); see also Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011); Velez-Padro v. Thermo King de Puerto Rico, Inc., 465 F.3d 31, 32-33 (1st Cir. 2006).)

As previously noted, a motion for reconsideration is to be denied except where the moving party can point to controlling decisions or data that the Court overlooked that might reasonably be expected to alter its conclusions. Shrader, 70 F.3d at 257. While "[c]ontrolling decisions include decisions

from [the Second Circuit]; they do not include decisions from other circuits or district courts, even courts in the Southern District of New York." Langsam v. Vallarta Gardens, No. 08 Civ. 2222 (LAP), 2009 WL 2252612, at *2 (S.D.N.Y. July 28, 2009). Accordingly, Watson, Brown, and Velez-Padro are not controlling. This Court also concludes that the language from the Second Circuit's decision in Moss is not controlling.  The Moss Court merely expressed skepticism in a footnote about the practice that this Court followed and specifically stated that it "need not resolve which standard of review applies to this objection" since it concluded that Moss's argument failed even on de novo review. Moss, 845 F.3d at 519 n.2.  This is clearly dicta and, therefore, not controlling. Bank of Am. Nat. Trust & Sav. Ass'n v. 203 North LaSalle St. P'ship, 526 U.S. 434, 460 (1999) ("[D]icta binds neither this Court nor the lower federal courts.").  As Plaintiffs have failed to cite controlling law that the Court overlooked which could alter its previous conclusion, the Court denies their motion for reconsideration as to their negligence claims. Shrader, 70 F.3d at 257.

## IV.  **Summary of the Claims**

Given the number of motions and orders in this case, the Court believes that a summary of the undismissed claims as to Panasonic and ICON is warranted.

As to Panasonic, Plaintiffs' claims for breach of contract and breach of warranty survive. Panasonic's counterclaim against Plaintiff TSL for breach of contract also remains.

As to ICON, Plaintiffs' negligence claim survives.

## CONCLUSION

For the reasons stated above, Panasonic's motion for reconsideration is GRANTED. On reconsideration, the Court GRANTS summary judgment to Panasonic on Plaintiffs' fraudulent inducement claim. Plaintiffs' motion for reconsideration is GRANTED as to their negligence and professional malpractice claims against ICON, but DENIED as to their negligence claim against Panasonic. On reconsideration, the Court DENIES ICON's motion for summary judgment as to Plaintiffs' negligence claim, but GRANTS summary judgment to ICON on Plaintiffs' professional malpractice claim.

The Clerk of Court is respectfully directed to terminate the motions docketed at ECF Nos. 205 and 208.

**SO ORDERED.**

Dated:    New York, New York
          May 29, 2019

                                    John F. Keenan
                          United States District Judge