UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MEDIA GLOW DIGITAL, LLC and TIMES SQUARE LED, LLC,

               Plaintiffs,

               - against -

PANASONIC CORP. OF NORTH AMERICA;
ICON ARCHITECTURAL GROUP, LLC;
ICON ARCHITECTURAL GROUP, PLLC;
ICON HD, LLC; EARL B. LOVELL-S.P.
BELCHER, INC., and NY LAND
SURVEYOR, P.C.,

               Defendants.

**ORDER**

16 Civ. 7907 (PGG)

---

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiffs Media Glow Digital, LLC and Times Square LED, LLC. have filed objections to Magistrate Judge Henry Pitman's December 10, 2018 order denying Plaintiffs' motion to file a proposed Third Amended Complaint ("TAC").  (Pltf. Obj. (Dkt. No. 191); Dec. 10, 2018 Order (Dkt. No. 190)).[1]  For the reasons stated below, this Court concludes that Magistrate Judge Pitman correctly denied Plaintiff's motion to amend under Fed. R. Civ. P. 16(b), and Plaintiffs' objection is overruled.

## BACKGROUND

**I.    FACTS**

        The facts of this case are set forth in Magistrate Judge Pitman's December 10, 2018 order.[2]  (Dkt. No. 190)  In short, this dispute relates to the design, fabrication, and

---

[1] Plaintiffs' objections are addressed to the Honorable John F. Keenan.  This case was reassigned to the undersigned on May 31, 2019.
[2] Familiarity with this and other orders issued in this case is assumed.

installation of an LED sign in New York's Times Square.  Plaintiff Media Glow entered into an agreement to build and operate the sign on the façade of the Millennium Broadway Hotel on West 44th Street in Manhattan, and then contracted with Defendant Panasonic Corp. of North America ("Panasonic") to purchase and install the sign.  (TAC (Dkt. No. 183-1) ¶¶ 13, 28)  Panasonic subcontracted the design, construction, and installation of the sign to one or more of the ICON Defendants, to which Plaintiffs did not object.  (Id. ¶¶ 37, 44)  The sign as constructed was incompatible with air rights, causing Plaintiffs to abandon the project in early 2014.  (Id. ¶ 110)

On June 12, 2014, Times Square LED, a company comprised of the principals of Media Glow, contracted with Panasonic to repurpose the sign for another hotel, the DoubleTree Suites Hotel at West 47th and Broadway.  (Id. ¶ 115)  On August 8, 2014, Times Square LED entered into a 20-year lease with the DoubleTree Suites Hotel concerning display of the sign, which was installed, but not without issues regarding the timeliness of the installation and the functionality of the sign.  (Id. ¶ 119-62)

## II. PLAINTIFFS' MOTION TO AMEND

In their proposed TAC, Plaintiffs seek to add allegations demonstrating that Defendant Panasonic, as well as Defendants ICON Architectural Group, LLC, ICON Architectural Group, PLLC, and ICON HD, LLC (collectively "ICON"), were grossly negligent. (Id. ¶¶ 24, 26-28, 34, 36-37, 39-43, 48-78, 84-85, 88-92, 97, 103-04, 106-09, 117, 119, 123-23, 126, 128-32, 141-48, 150-53)

Plaintiffs' new allegations may be summarized as follows:  Panasonic outsourced fabrication of the sign components to a Chinese company, SZRetop Shenzhen ("Retop"), which had a poor reputation in the industry.  (Id. ¶ 36)  ICON – retained to provide architectural and

2

engineering services – had no experience in (1) constructing or installing large LED signs in New York City; (2) the relevant installation method; or (3) handling projects "that presented the air rights challenges" of this site.  (Id. ¶¶ 37-40)  Media Glow advised Panasonic of the air rights issues early on, and Panasonic agreed that it was necessary to obtain precise measurements regarding the available air space.  (Id. ¶¶ 48, 53-54)  Media Glow provided documents from the Lovell-Belcher air rights survey to Panasonic.  Panasonic provided the survey documents to ICON, and "communicat[ed] to ICON that there was some uncertainty as to what the air rights were between floors 9 and 36 of the Millennium," where the sign would be installed.  (Id. ¶¶ 56, 62)  Panasonic and ICON were not certain that the existing survey measurements were accurate, but nonetheless relied on these measurements rather than performing their own measurements or commissioning another survey.  (Id. ¶¶ 57-58, 63-64, 75)

In April 2012, Media Glow submitted ICON's proposed design and installation procedures for peer review by a third-party engineer, who found some of ICON's methods "unacceptable."  (Id. ¶¶ 82-84)  ICON's untimely and improper applications for permits and inadequate staffing further delayed the installation of the sign.  (Id. ¶¶ 88-91)  After the Millennium Sign was abandoned in favor of the DoubleTree project, Defendants again failed to build and install the sign properly and in a timely fashion.  (Id. ¶¶ 124-131)  As installed, the sign suffered from various visual defects, some of which Panasonic was aware of before installation, and some of which persisted into 2018.  (Id. ¶¶ 141-48)  Moreover, Panasonic was "responsible for acquiring UL, CE, ETL, ROSH, and CCC certifications under the contracts," and while Panasonic hired Intertek to provide the testing and certifications, the testing was never completed and the certifications were never obtained.  (Id. ¶¶ 151-153)

3

**III.     PROCEDURAL HISTORY**

The Complaint was filed on October 10, 2016 (Cmplt. (Dkt. No. 1)), and the Second Amended Complaint ("SAC") was filed on May 8, 2017.  The SAC pleads claims for: (1) breach of contract against Lovell-Belcher and NY Land Surveyor; (2) breach of contract against Panasonic; (3) breach of warranty against Panasonic; (4) breach of contract (third party beneficiary) against ICON; (5) negligence and negligent misrepresentation against Panasonic and ICON; (6) fraud and fraudulent inducement against Panasonic; and (7) professional malpractice against ICON.  (SAC (Dkt. No. 33) at 22-26)[3]

On November 30, 2017, Panasonic moved for partial judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), arguing that limitation of damages clauses in its contracts with Plaintiffs bar recovery beyond the payments Panasonic received from Plaintiffs.  (Panasonic Br. (Dkt. No. 82) at 6)

On April 5, 2018, ICON moved for summary judgment on all of Plaintiffs' claims.  (ICON Mot. (Dkt. No. 164))  On April 6, 2018, Defendant Panasonic moved for summary judgment on Plaintiffs' claims against it, other than Plaintiffs' breach of contract claim.  Panasonic also moved for summary judgment on its counterclaim against Times Square LED. (Panasonic Mot. (Dkt. No. 139))

On May 11, 2018, Judge Keenan granted Panasonic's partial motion for judgment on the pleadings, holding that "Plaintiffs may not recover from Panasonic consequential damages . . . or punitive damages."  (May 11, 2018 Order (Dkt. No. 130) at 23)

---

[3]  All references to page numbers in this Order are as reflected in this District's Electronic Case Files system.

4

On August 1, 2018, Plaintiffs moved for permission to file a Third Amended Complaint. (Dkt. No. 182) Because Judge Keenan had referred the case to Magistrate Judge Pitman for general pretrial management (Dkt. No. 91), Judge Pitman addressed Plaintiffs' motion to amend. In a December 10, 2018 order, Judge Pitman denied Plaintiffs' request to file the TAC. (Dec. 10, 2018 Order (Dkt. No. 190)) On December 21, 2018, Plaintiffs filed objections to Judge Pitman's December 10, 2018 order. (Pltf. Obj. (Dkt. No. 191)) Judge Keenan did not address Plaintiffs' objections at that time.

On March 6, 2019, Magistrate Judge Pitman issued an R&R to Judge Keenan concerning Panasonic and ICON's motions for summary judgment (R&R (Dkt. No. 195)), and on March 29, 2019, Judge Keenan issued an order partially adopting Judge Pitman's R&R. (March 29, 2019 Order (Dkt. No. 204)) Judge Keenan granted Panasonic summary judgment on Plaintiffs' negligence, negligent misrepresentation, and fraud claims, but denied Panasonic's motion as to Plaintiffs' fraudulent inducement and breach of warranty claims. (Id. at 15) Judge Keenan likewise denied Panasonic summary judgment on its breach of contract counterclaim against Times Square LED. (Id. at 15-16) As to ICON, Judge Keenan granted ICON summary judgment on all of Plaintiffs' claims, including breach of contract, negligence, professional malpractice, and negligent misrepresentation. (Id. at 15)

On April 3, 2019, Panasonic moved for reconsideration, arguing that it was entitled to summary judgment on Plaintiffs' fraudulent inducement claim. (Panasonic Mot. (Dkt. No. 205)) On April 12, 2019, Plaintiffs moved for reconsideration, arguing that Judge Keenan erred in granting (1) ICON summary judgment on Plaintiffs' negligence and professional malpractice claims; and (2) Panasonic summary judgment on Plaintiffs' negligence claim. (Pltf. Mot. (Dkt. No. 208)) In a May 29, 2019 order, Judge Keenan granted Panasonic's motion for

5

reconsideration, concluding that Panasonic was entitled to summary judgment on Plaintiffs' fraudulent inducement claim. (May 29, 2019 Order (Dkt. No. 215) at 24) As to Plaintiffs' motion for reconsideration, Judge Keenan denied the motion as to Plaintiffs' negligence claim against Panasonic (id.), but granted the motion as to Plaintiffs' claims against ICON. Considering Plaintiffs' negligence and professional malpractice claims against ICON de novo, Judge Keenan concluded that ICON was entitled to summary judgment on Plaintiffs' professional malpractice claim, but that Plaintiffs' negligence claim against ICON should proceed. (Id.)

On June 11, 2019, ICON moved for reconsideration of Judge Keenan's May 29, 2019 order, arguing that it was entitled to summary judgment on Plaintiffs' negligence claim. (ICON Mot. (Dkt. No. 216)) On March 24, 2020, this Court – to whom the matter had been reassigned – denied ICON's motion for reconsideration. (Mar. 24, 2020 Order (Dkt. No. 228)) As a result of the motion practice summarized above, only the following claims in the SAC remain: Plaintiffs' claims against Panasonic for breach of warranty and breach of contract; Plaintiffs' claim against ICON for negligence; and Panasonic's counterclaim against Times Square LED for breach of contract. (Id. at 5)[4]

## IV. JUDGE PITMAN'S DECEMBER 10, 2018 ORDER DENYING PLAINTIFFS' MOTION TO FILE A THIRD AMENDED COMPLAINT

Judge Pitman denied Plaintiffs' motion to file a Third Amended Complaint, finding that (1) Plaintiff had "failed to demonstrate the requisite diligence here to justify the untimeliness of their motion to amend"; and (2) permitting further amendment would be futile,

---

[4] The SAC's breach of contract claim against NY Land Surveyor P.C. was voluntarily dismissed on July 18, 2018. Earl B. Lovell-S.P. Belcher, Inc. has not appeared. (SAC (Dkt. No. 33) at 22; Dkt. No. 181)

6

because the TAC's new allegations do "not raise a triable issue of fact as to defendants' gross negligence that would allow recovery that is barred by the contractual limitations on damages." (Dec. 10, 2018 Order (Dkt. No. 190) at 23)  In so holding, Judge Pitman found that the TAC's new allegations "do[] not rise to the level of gross negligence required by the cases . . . , because defendants did not recklessly disregard the rights of plaintiffs, nor did they place anyone in physical danger."  (Id. at 23-24)

## V.      PLAINTIFFS' OBJECTIONS

In objecting to Judge Pitman's December 10, 2018 order, Plaintiffs argue that (1) their "diligence should be measured from . . . the Court's ruling on Defendants' Rule 12(c) motion," not from the date when Defendants filed their answer.  (Pltf. Obj. (Dkt. No. 191) at 20); and (2) "[t]he TAC alleges sufficient facts to establish each of the[] elements" of gross negligence under New York law, and that Judge Pitman erred by "impos[ing] a requirement that gross negligence must involve physical injury or the risk of physical injury."  (Id. at 21, 23)

## DISCUSSION

## I.       LEGAL STANDARDS

### A.      Review of Objections to a Magistrate Judge's Non-Dispositive Order

Fed. R. Civ. P. 72(a) provides:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision.  A party may serve and file objections to the order within 14 days after being served with a copy. . . .  The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Fed. R. Civ. P. 72(a).

A motion to amend is not a dispositive motion.  Samad Bros. v. Bokara Rug Co., No. 09 CIV. 5843 JFK, 2010 WL 5094634, at *1 (S.D.N.Y. Dec. 13, 2010) (reviewing a

magistrate judge's denial of a motion to amend under the Rule 72(a) standard); see also Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir. 2007) (same).

Although Plaintiffs contend that this Court should review their objections de novo, they cite no cases from this District adopting that approach in the context of a motion to amend.  (See Pltf. Obj. (Dkt. No. 191) at 17 (citing Torres v. DJ Southhold, Inc., No. 17-CV-5123 (SJF) (AYS), 2018 WL 3653156, at *1 (E.D.N.Y. July 31, 2018); Portelos v. City of New York, No. 12-CV-3141(RRM)(VMS), 2015 WL 5475494, at *1 (E.D.N.Y. Sept. 15, 2015)))  "Based on the weight of authority in this Circuit applying a clearly erroneous standard of review to a magistrate's ruling on a party's motion to amend a pleading, this court will apply a clearly erroneous standard of review . . . ." Lyondell-Citgo Ref., L.P. v. Petroleos De Venezuela, S.A., No. 02 CIV. 0795 (CBM), 2005 WL 883485, at *3 (S.D.N.Y. Apr. 14, 2005).

### B. Motion to Amend Standard

District courts "ha[ve] broad discretion in determining whether to grant leave to amend." Gurary v. Winehouse, 235 F.3d 793, 801 (2d Cir. 2000).  "[L]eave to amend should be freely granted when 'justice so requires.'" Pangburn v. Culbertson, 200 F.3d 65, 70 (2d Cir. 1999) (quoting Fed. R. Civ. P. 15(a)); Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234 (2d Cir. 1995) ("The Supreme Court has emphasized that amendment should normally be permitted, and has stated that refusal to grant leave without justification is 'inconsistent with the spirit of the Federal Rules.'" (quoting Foman v. Davis, 371 U.S. 178, 182 (1962))).  "Where a scheduling order has been entered, [however,] the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'" Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003); see also Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good

cause and with the judge's consent.")  "'[A] district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause.'"  Perfect Pearl Co. v. Majestic Pearl & Stone, Inc., 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (quoting Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000)).

In determining whether a movant has satisfied the "good cause" standard under Rule 16(b), "the primary consideration is whether the moving party can demonstrate diligence." Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007); Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009) ("Whether good causes exists turns on the 'diligence of the moving party.'" (citations omitted)).  "A party has not acted diligently where the proposed amendment to the pleading is based on information 'that the party knew, or should have known,' in advance of the deadline sought to be extended."  Kontarines v. Mortg. Elec. Registration Sys., Inc., No. 15 Civ. 2206 (ARR), 2016 WL 3821310, at *3 (E.D.N.Y. July 12, 2016) (quoting Perfect Pearl Co., 889 F. Supp. 2d at 457).

"If good cause supports modifying the court-ordered deadline to amend, the moving party must still comply with Fed. R. Civ. P. 15."  Eberle v. Town of Southampton, 985 F. Supp. 2d 344, 346 (E.D.N.Y. 2013).  Although Rule 15(a) provides that leave to amend generally should be "freely give[n] . . . when justice so requires," a court may properly deny leave to amend in cases of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (quoting Foman, 371 U.S. at 182).

9

"'Where it appears that granting leave to amend [would be futile or] is unlikely to be productive[,] . . . it is not an abuse of discretion to deny leave to amend.'" See Lucente v. Int'l Bus. Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002) (quoting Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)); Selvam v. Experian Info. Sols., Inc., No. 13 Civ. 6078 (DLI) (JO), 2015 WL 1034891, at *4 (E.D.N.Y. Mar. 10, 2015) (denying leave to amend after granting motion to dismiss because "[t]he [amended] complaint gives no indication that Plaintiff has a colorable claim . . . [,] and Plaintiff has already had one opportunity to amend the complaint"); Murdaugh v. City of N.Y., No. 10 Civ. 7218(HB), 2011 WL 1991450, at *2 (S.D.N.Y. May 19, 2011) ("Although . . . leave to amend complaints should be 'freely given,' leave to amend need not be granted where the proposed amendment is futile." (citations omitted)).

"[Parties] opposing a motion to amend . . . bear[] the burden of establishing that an amendment would be futile." Bonsey v. Kates, No. 13 Civ. 2708 (RWS), 2013 WL 4494678, at *8 (S.D.N.Y. Aug. 21, 2013) (citing Blaskiewicz v. Cty. of Suffolk, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998)). "Ordinarily, leave to amend may be denied on the basis of futility if the proposed claim would not withstand a Rule 12(b)(6) motion to dismiss." Summit Health, Inc. v. APS Healthcare Bethesda, Inc., 993 F. Supp. 2d 379, 403 (S.D.N.Y. 2014), aff'd sub nom. APEX Employee Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc., 725 F. App'x 4 (2d Cir. 2018) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002)). "However, when the motion to amend is filed after the close of discovery and the relevant evidence is before the court, a summary judgment standard will be applied instead." Id. (citing Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001)).

### C. Gross Negligence Under New York Law

"New York law generally enforces contractual provisions absolving a party from its own negligence." Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd., 81 N.Y.2d 821, 823 (1993) (citations omitted). "Public policy, however, forbids a party's attempt to escape liability, through a contractual clause, for damages occasioned by 'grossly negligent conduct[.]' Used in this context, 'gross negligence' differs in kind, not only degree, from claims of ordinary negligence. It is conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." Id. at 823-24 (citations omitted). "To state a claim for gross negligence under New York law, [a plaintiff] must establish four elements: (1) the existence of a duty; (2) a breach of that duty; (3) injury as a result thereof; and (4) conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing . . . ." Purchase Partners, LLC v. Carver Fed. Sav. Bank, 914 F. Supp. 2d 480, 497 (S.D.N.Y. 2012) (internal citations and quotations omitted).

"Federal courts applying New York law have consistently applied the higher standard of 'reckless disregard' in cases where a party seeks to pursue a claim of gross negligence despite a release of liability." Indus. Risk Insurers v. Port Auth. of New York & New Jersey, 387 F. Supp. 2d 299, 307 (S.D.N.Y. 2005), aff'd in part, remanded in part sub nom. Indus. Risk Insurers v. Port Auth. of N.Y. & NJ, 493 F.3d 283 (2d Cir. 2007), and adhered to sub nom. Indus. Risk Insurers v. The Port Auth. of New York & New Jersey, No. 02 CIV. 7170(AKH), 2008 WL 282273 (S.D.N.Y. Jan. 30, 2008).

## II.     ANALYSIS

### A.     Diligence

The scheduling order in this case set a deadline of May 8, 2017 for motions to amend.  (Dec. 10, 2018 Order (Dkt. No. 190) at 20)  On May 21, 2018, Plaintiffs requested a pre-motion conference concerning their proposed motion to file a Third Amended Complaint.  (Dkt. No. 162)  Plaintiffs' request to amend thus came more than a year after the scheduling order's deadline for motions to amend.

Given these circumstances, Judge Pitman concluded that, under Rule 16, "the issue is whether [P]laintiffs failed to act diligently in pursuing discovery concerning their claim of gross negligence . . . ."  (Dec. 10, 2018 Order (Dkt. No. 190) at 20)  Judge Pitman found that Plaintiffs had not "explain[ed] their failure to serve document requests until November 2017 or to depose defendants' witnesses until February 2018," and thus had not "demonstrate[d] the requisite diligence . . . to justify the untimeliness of their motion to amend."  (Id. at 21-23)  Plaintiffs object that their "diligence should be measured from . . . the Court's [May 11, 2018] ruling on Defendants' Rule 12(c) motion," not from [February 17, 2017], when Defendant Panasonic filed its answer to the Complaint.  (Pltf. Obj. (Dkt. No. 191) at 20)

In his December 10, 2018 order, Judge Pitman rejected Plaintiffs' argument, noting that Judge Keenan's May 11, 2018 decision on Defendants' Rule 12(c) motion "did not newly introduce into the case the contractual limitations of liability and [P]laintiffs' need to prove gross negligence to overcome those limitations."  (Dec. 10, 2018 Order (Dkt. No. 190) at 21)  "[P]laintiffs knew, or should have known, by February 2017 [– when Defendant Panasonic filed its answer to the Complaint (Dkt. No. 26) –] that they would need to establish a factual basis for a gross negligence claim to recover damages beyond the contractual limitations of

12

liability," because in its Answer Panasonic asserts "limitation of damages provisions" as an affirmative defense. (Id.) Accordingly, Judge Pitman found that Plaintiffs had not met their burden of demonstrating diligence under Rule 16.

In their objections, Plaintiffs now cite Cresci v. Mohawk Valley Cmty. Coll., 693 F. App'x 21, 25 (2d Cir. 2017) for the proposition that "a plaintiff is on notice of a complaint's deficiencies when a court decides a Rule 12 motion, not when a defendant argues that the claims are deficient." (Pltf. Obj. (Dkt. No. 191) at 20)  But the circumstances in Cresci – a summary order of no precedential significance – were entirely different.  In Cresci, the district court "granted the defendant's motion to dismiss, identifying the flaws it found in the complaint, and denied [plaintiff] leave to replead, faulting him for having failed to submit a proposed amended complaint in the time between the defendant's motion to dismiss and the court's ruling on it." Cresci, 693 F. App'x at 24-25.  The Second Circuit found that "[s]uch a denial is not compatible with the liberal objective of Rule 15." Id. at 25.

Judge Pitman's ruling was not based on Rule 15 and its more liberal standards, however.  Because of Plaintiffs' failure to abide by the deadlines set forth in the scheduling order, Judge Pitman was instead required to apply Rule 16(b).  Pursuant to Rule 16(b), a court is required to consider whether "the proposed amendment to the pleading is based on information 'that the party knew, or should have known,' in advance of the deadline sought to be extended." Kontarines, 2016 WL 3821310, at *3.  Plaintiffs filed the SAC after Panasonic had pled "limitation of damages provisions" as an affirmative defense in its answer to the Complaint. Accordingly, as of February 17, 2017, when Panasonic filed its answer to the Complaint, Plaintiffs were on notice of the need to plead and prove gross negligence.  Moreover, Plaintiffs do not contend that the new allegations set forth in the TAC are based on information discovered

13

after the SAC was filed. Indeed, Plaintiffs concede that their "need to plead additional facts did not arise because of information learned during discovery." (Pltf. Obj. (Dkt. No. 191) at 19)

Given these circumstances, Plaintiffs have not demonstrated diligence. They seek to rely on facts known to them before the SAC was filed and before the scheduling order's deadline for amendment expired. This Court finds no error, much less clear error, in Judge Pitman's ruling that the proposed TAC is barred by Fed. R. Civ. P. 16(b). Accordingly, Plaintiffs' objection is overruled.

Having concluded that Plaintiffs' motion to file a Third Amended Complaint was properly denied by Judge Pitman under Fed. R. Civ. P. 16(b), this Court need not address Plaintiffs' objections regarding Judge Pitman's futility findings under Fed. R. Civ. P. 15.

## CONCLUSION

For the reasons stated above, Plaintiffs' objection to Magistrate Judge Pitman's ruling regarding the application of Fed. R. Civ. P. 16(b) is overruled, and their motion to amend (Dkt. No. 182) is denied.

Dated: New York, New York
      June 26, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge